### Ferguson *vs.* Ferguson.

Where a bill against a husband, for a divorce, contained a general charge that the defendant, between the day of his marriage with the complainant, in March, 1843, and the 30th of September, 1844, had been guilty of adultery with some female in the city of New-York, and an issue was framed in the words of that general allegation, and upon the trial no attempt was made to prove any act of adultery in the city of New-York, or at any other place, except by implication from the stains upon the defendant's linen, supposed to be the stains arising from libidinous intercourse; *Held* that the jury were not authorized in finding a verdict for the complainant upon such evidence.

It is the duty, and is within the power of the court of chancery, to grant a new trial of a feigned issue, on a bill for a divorce, where there is reason to believe the defendant has been unjustly found guilty of adultery.

The object of requiring a jury trial in suits for a divorce, on the ground of adultery, where the adultery is denied, is to protect the rights of the defendant. And the court will not make a decree of divorce where there is reason to doubt the fact of his guilt.

THIS was an appeal from an order of the vice chancellor of the first circuit, granting a new trial upon a feigned issue. The complainant filed a bill against her husband, for a divorce, on the ground of his alleged adultery. The bill charged that the defendant had committed adultery with S. M. D., and one issue was framed upon that charge. It also contained a general charge, that the defendant, between the day of his marriage with the complainant, in March, 1843, and the 30th of September, 1844, had been guilty of adultery with some female in the city of New-York: and another issue was framed in the words of that general allegation. On the trial, no attempt was made to prove the specific charge of adultery with S. M. D., or any other act of adultery in the city of New-York, or at any other place, except by implication from the stains upon his linen, supposed to be the stains of disease arising from libidinous intercourse.

*J. R. Whiting & B. D. Silliman*, for the appellant.

*Joseph L. White*, for the respondent.

THE CHANCELLOR.   Upon the evidence in this case, I think the jury were not warranted in finding a verdict for the complainant upon either of the issues.   No evidence was given under the first issue, even to create a suspicion that the defendant had been guilty of adultery with the individual named in the complainant's bill.   Nor was there a particle of evidence to justify a suspicion of an improper intercourse with any person, except the suspicion arising from the stains upon the defendant's linen.   Even if it were conclusively proved that these stains proceeded from the part of the defendant's person which their situation upon his body linen seemed to indicate, it would not be sufficient of itself, uncorroborated by other circumstances, to authorize the jury to presume that they had been produced by an adulterous intercourse.   Doctor Male is of the opinion that an honest and virtuous female, affected by the *fluor albus*, or leucorrhœa, may communicate a disease to her husband that will produce a gonorrheal discharge resembling, in appearance, that of syphilitic origin.   Indeed, if medical writers are right in supposing that the *gonorrhea impura* itself is produced by the inflammation of the cellular tissue of the mucous membrane of the vagina, or of the urethra, causing a discharge of purulent matter therefrom, it is evident that strictures, and other irritations of the urethra, may produce a purulent discharge resembling the disease which arises from impure and guilty intercourse.

Again ; Dunglisson says pus is almost always of the same nature, whatever may be the part it proceeds from.   And there can be very little doubt that the stains produced by a purulent discharge from any of the mucous membranes would, when dry, so nearly resemble those of syphilitic origin as to render it impossible to distinguish the one from the other.   Doctor Cairnes was then probably right in testifying that the color of the stains, produced by either, would depend entirely upon the violence of the disease ; and that no physician could, by the appearance alone, tell the one from the other, when dry.   There are various ways, therefore, in which these stains of purulent matter may have been produced, consistently with the entire

innocence of the defendant; and that, too, without supposing that any person had produced these stains intentionally upon the linen, and placed it in a situation to be seen by the witnesses who were called upon to notice its appearance, and place their marks upon it.

The ready acquiescence of the defendant in the suggestion, of the complainant's solicitor, for an examination of his person, was certainly a circumstance in his favor. Nor is it any thing against him, that when he found that Norris, his personal enemy, had been brought into his house to listen to his conversation, he immediately retracted his consent, and kicked Norris out of doors. On the contrary, it was just what might have been expected from a man of ordinary spirit, under such circumstances, who was conscious of his innocence. The testimony of the medical witnesses who examined the person of the defendant is very strong in his favor, to show the utter improbability that he should have been affected with the disease attributed to him, at the time the stains upon his linen are supposed to have been made; although medical writers agree that it is possible to conceal the existence of the disease for a short time by the use of temporary remedies.

I have no doubt of the power and duty of the court, in a case of this kind, to grant a new trial, where there is reason to believe the defendant has been unjustly convicted of an odious offence against the laws of decency and morality; although the court is bound to grant an issue, and cannot make a final decree in the cause except upon the verdict of a jury. The object of requiring a jury trial in all cases of this kind, where the adultery is denied, is for the protection of the rights of the accused. And the court should not make a decree which is to deprive the defendant of some of the most important of his social rights, where there is so much reason to doubt the fact of his guilt.

For these reasons, I think the decision of the vice chancellor, in awarding a new trial, was right. The order appealed from must therefore be affirmed with costs.