By the Court. Mason, J.
On the argument before us, the counsel discussed at large, the principles which ought to govern the court in granting or refusing new trials in cases of this sort.
It was contended on behalf of the defendant, that feigned issues are ordered by courts of equity for the purpose of satisfying the conscience of the court, and that if for any material reason the court is not satisfied with the verdict, a new trial will be ordered ; that it will nicely weigh the evidence, and will set aside a verdict as against the weight of evidence, in cases where a court of law would refuse to do so.
There is a manifest distinction, however, between feigned issues sent out of chancery for the purpose of aiding the court in deciding upon facts, and those which are framed in order to try the fact of adultery. The first are for the information of the court; the power and the duty of. determining the facts belong to it and not to the jury, and therefore if the court is not satisfied entirely with the finding of the jury, it may either direct a new trial, or decide the cause even contrary to the verdict. Such a course was taken by the master of the rolls, in Armstrong v. Armstrong, (3 Myl. and K. 45,) and his decree was affirmed on appeal by the lord chancellor. But our statute in relation to divorces, has taken from the court the power of deciding upon the fact of adultery, where it is denied by the party charged, and conferred it upon the jury; and although the court is authorized by the statute to grant a new trial, as often as justice shall seem to require, yet it would seem to be proper that this court in the exercise of this power, should follow the rules adopted by courts of law in granting new trials; and that where there is conflicting evidence, a verdict should not be set aside simply because the court might think it to be against the weight of evidence, or would have decided differently from the jury.
The case before us, however, is not one in which there is conflicting evidence, upon which it might be the peculiar province of the jury to pass. The plaintiff’s case rests mainly *309 upon one fact, which is clearly established. The contest between the parties is as to the inference to be drawn from that fact. Lord Stowell, in loveden v. Loveden, (2 Hagg. Consistor. Rep. 1,) thus states the principles of evidence in divorce cases. “ It is a, fundamental rule, that it is not necesary to prove the direct fact of adultery; because if it were otherwise, there is not one case in a hundred in which that proof would be attainable. It is very rarely indeed that the parties are surprised in the direct fact of adultery. In every case almost, the fact is inferred from the circumstances that lead to it, by fail’ inference as a necessa/ry conclusion, and unless this were the case, and unless this were so held, no protection whatever could be given to marital rights. What are the circumstances which lead to such a conclusion, eannot be laid down universally; though many of them, of a more obvious nature and of more frequent occurrence, are to be found in the ancient books. * * * * * * The only general rule that can be laid down upon the "subject is, that the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion : for it is not to lead a harsh and intemperate judgment, moving upon appearances that are equally capable of two interpretations q neither is it to be a matter of artificial reasoning, judging upon such things differently from what would strike the careful and cautious consideration of a discreet man.”
This rule, so simply and lucidly stated, commends itself to the approbation of every mind, and its application to the present case will lead us to a correct decision. .
(The judge then examined the evidence, and came to the conclusion that it was equally capable of two interpretations, and therefore did not prove that the defendant had the venereal disease, which was the fact sought to be proved.)
But even admitting the correctness of the inference, from such a state of facts, that the defendant had the venereal disease, still that alone does not prove adultery. The plaintiff, therefore, calls upon us to draw this further inference, that the disease was contracted by means of illicit intercourse after marriage. It was an essential part of the plaintiff’s case, to show that the discharge could not have existed except from recent infection, and could *310 not have been the result of immoralities before marriage. It is remarkable, however, that on this point, so essential to their success, the plaintiff’s counsel did not ask a single question. All the evidence on this part of the case, was elicited by the defendant’s counsel, and it is entirely at variance with the inference sought by the plaintiff. Dr. Wood states that the disease may break out after marriage, without any improper intercourse —that cold and other causes may reproduce an old stricture; and Dr. Parker says that the disease may give no trouble for years, and then break out again. Here, then, on the supposition that the appearances indicated the existence of the disease charged by the plaintiff, we find those appearances equally capable of two interpretations, so far as the time of its contraction is concerned—one entirely consistent with the innocence of the defendant, and the other involving a violation of the most solemn obligations. It is impossible for any man to say, that the circumstance of the disease being found within eighteen months after marriage, leads, “ by fair inference, to the necessary conclusion,” that it was contracted since, and not prior to the marriage.
But unless from the single fact proved, (the details are omitted,) we first infer that it indicates necessarily the existence of the venereal disease, and then build upon that inference the further one that the disease was contracted after marriage, the plaintiff must fail. There is nothing on which her case can rest. Both inferences are necessary. We cannot adopt either. It would be dangerous in the extreme, to found a decree of divorce on such grounds. It is not a case of conflicting evidence, but of an entire absence of evidence, direct, presumptive, or circumstantial. Had this been an ordinary trial at law, it would have been the duty of the judge to have withdrawn the cause from the jury for want of evidence, and to have nonsuited the plaintiff; and it is equally our duty, for the same reason, to set aside the verdict. And we would feel ourselves obliged to do the same thing, as often as the case might come before us for review upon the same state of facts, with no other grounds for a verdict against the defendant than were presented on the last trial.
Hew trial granted.