MOORE v. MOORE.

(Supreme Court, Trial Term, St. Lawrence County.    March 23, 1912.)

1. DIVORCE (§ 129*) —GROUNDS—ADULTERY—EVIDENCE.

The adultery of a husband cannot be inferred from the mere fact of the wife being tainted with a venereal disease, though she herself is not suspected of adultery.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 411–441, 454; Dec. Dig. § 129.*]

2. DIVORCE (§ 129*)—ADULTERY—EVIDENCE—SUFFICIENCY.

In a suit by a wife for divorce on the ground of the husband's adultery, evidence *held* not to show adultery.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 411–441, 454; Dec. Dig. § 129.*]

―――――――――

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. DIVORCE (§ 135*)—MISCONDUCT OF HUSBAND—CONDONATION BY WIFE—EV-
IDENCE.
Where, in a suit by a wife for divorce on the ground of the adultery
of the husband, the wife testified that she did not cohabit with the hus-
band after the discovery by her that she had contracted a venereal dis-
easē, and, after she commenced to receive treatment for it, but the evi-
dence showed that she continued to live with him for six weeks or more
thereafter, excepting the times when she was away from home to receive
treatment, the evidence was not sufficiently clear to warrant a finding
that she did not condone the husband's acts.
[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 451; Dec. Dig. §
135.*]

4. DIVORCE (§ 129*)—ADULTERY—EVIDENCE.
In a suit by a husband for divorce on the ground of his wife's adultery,
evidence held not to show adultery.
[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 411–441, 454;
Dec. Dig. § 129.*]

Action by Mabel Moore against Floyd Moore for divorce, in which
defendant also asked for divorce. Divorce denied.

George A. Adams, for plaintiff.
Joseph F. Brown and George H. Bowers, for defendant.

WHITMYER, J. The action is for divorce on the ground of
adultery; the complaint being based solely on the claim that plain-
tiff contracted the venereal disease from defendant in January, 1910.
Defendant denies the charge, and sets up specific acts of adultery
on the part of plaintiff. Each asks for a divorce against the other.

The parties were married January 28, 1903, separated some time
in March, 1910, and the action was commenced in October, 1911. Up
to the time of their separation the parties resided in the village of
De Grasse, St. Lawrence county. On December 28, 1909, defendant
left his home in said village to work in a lumber camp at the Wind-
fall, in Clifton, an adjoining town. He worked there until January
15, 1910, when he returned home. Plaintiff visited defendant at
the camp once early in the week of defendant's return, and slept with
him on that occasion. It appears from defendant's testimony, and it is
not denied, that the parties cohabited for about a week or 10 days aft-
er defendant's return. About a week or 10 days after such return,
plaintiff claims that she became ill, and that she was advised by de-
fendant to seek treatment from a certain doctor residing in the village
of Hermon, in said county. She was treated by this doctor 10 or 12
different times at intervals of 4 or 5 days. The treatment, accord-
ing to plaintiff, was for "a bad disorder"; according to the doctor,
for "a venereal disease." Defendant says that he did not have any
venereal disease when he left the camp, and denies that he ever told
plaintiff's brother that he had contracted such a disease at the camp,
but he admits that he had and treated himself for "a bad disease"
after his return. Just when he contracted this disease, or when he
commenced treatment for it, does not appear. Defendant says that
his wife' was the only woman with whom he had intercourse at any
time. He was at the camp during all of the time of his employ-

ment there, and the only woman at the camp, excepting his wife, was 79 years of age. On the other hand, the evidence shows, and plaintiff does not deny, that several men visited her during defendant's absence, one of them during the afternoon of the day that defendant started for the camp and the other during an evening thereafter. Plaintiff herself went to the house where the first visitor resided, returned with him to her own home, and remained with him there for from 2½ to 3½ hours with curtains down. What transpired during these visits does not more definitely appear. Plaintiff continued to receive treatment until about March 1, 1910, returning to her home after each treatment. Although she says that she did not cohabit with her husband during this time, yet the evidence shows that she lived with him, and continued to occupy the same bed and to sleep with him until shortly after March 1, 1910, when she left him and went to the village of Russell to live with one William Smith, named as corespondent herein. She lived with Smith in the village of Russell until June, 1910, when they removed to the village of Canton, in said county, where they have since lived and now live together; plaintiff claiming employment by Smith as his housekeeper.

[1] In the case of Johnson v. Johnson, 4 Paige, 460, the fact of a husband's having the venereal disease long after marriage was held to be prima facie evidence of adultery. Other cases, however, are to the effect that the adultery of the husband cannot be inferred from the mere fact of the wife's being tainted with the venereal disease, although she herself is not suspected of adultery. Ferguson v. Ferguson, 1 Barb. Ch. 604; Id. (second trial) 3 Sandf. 307; Id. (third trial) Seld. Notes, 249; Homburger v. Homburger, 46 How. Prac. 346; Auld v. Auld (Super. Ct.) 16 N. Y. Supp. 807. In the case of Ferguson v. Ferguson, supra, there was no evidence of any adultery by the husband, except by implication from certain stains on his linen, supposed to result from venereal disease, and it was held, on the first and second trials, that the verdict was unauthorized. The court declined on the third trial to interfere with the verdict of the jury. In the case of Homburger v. Homburger, supra, it was held that a wife cannot obtain a divorce from her husband on the ground of his adultery, without further testimony, where the evidence is insufficient to show that he had the venereal disease, or that he communicated it to her. This case cites the case of Collett v. Collett, Jud. Com. of Privy Council, Wadd. Dig. 38, where it was distinctly held that the adultery of the husband cannot be inferred from the mere fact of the wife's being tainted with venereal disease, although she herself is not even suspected of adultery; that the existence of such disease in the wife is consistent (1) with adultery of the husband, (2) adultery of the wife, (3) with accidental communication of it; and that, where there is no proof of the husband's having been himself diseased at the time specified in the libel, it will not be ascribed by preference to the first of these causes, even though it appears that at a former time he had infected his wife. The case of Auld v. Auld, supra, is to the same effect.

[2] The evidence does not show any specific act or acts of adul-

tery on the part of defendant. The only woman at the camp where he worked was 79· years of age. His wife visited him there early in the week of his return, and they slept together. He says that he did not have intercourse with any woman except his wife. He returned to his home about the middle of January, 1910, and lived and cohabited with his wife, the evidence clearly shows, for about 10 days thereafter, when she became ill and consulted and received treatment from a doctor. The treatment continued for a period of about six weeks, and, according to plaintiff, was for "a bad disorder"; according to the doctor, for "a venereal disease." That she had the disease does not more definitely appear. At about this time defendant says that he had "a bad disease." Whether he had it before the time plaintiff contracted it does not satisfactorily appear. Plaintiff's brother, it is true, in response to a leading question, not objected to, said that defendant stated to him that he had contracted the disease "up country," but he had previously stated that defendant did not tell him when or where he had contracted it, so that his testimony is of no value as to this feature of the case, regardless of defendant's denial of the statement. Under these circumstances and under the cases cited, it seems to me that the evidence is insufficient to sustain a finding of adultery. Conjecture is not sufficient to warrant such a finding.

[3] In addition to this, assuming that defendant communicated the disease to plaintiff, it seems to me that the evidence is not sufficiently clear to warrant a finding that plaintiff did not condone any act or acts of adultery of which defendant may have been guilty. Plaintiff, it is true, says that she did not cohabit with defendant after the discovery by her that she had contracted the disease and after she commenced to receive treatment for it, but the evidence shows that she continued to live and to sleep with defendant for a period of six weeks or more thereafter, excepting the times when she was away from home for the purpose of receiving treatment.

[4] In the same way the evidence of defendant on the counterclaim seems to me to be insufficient to warrant a finding against plaintiff. That evidence may excite suspicion, but a finding must have something more than suspicion for a basis.

Judgment accordingly.