1834.

Johnson
v.
Johnson.

---

### JOHNSON *vs.* JOHNSON.

Where the master, upon a reference to take proof of the adultery charged in a bill for a divorce, received the testimony of a physician, disclosing information which he had acquired in attending upon the defendant in a professional character. and which information was necessary to enable the witness to prescribe for his patient; *It was held,* that such testimony must be rejected by the court, in deciding whether the defendant had been guilty of the adultery, as charged in the bill.

A voluntary cohabitation of a wife with her husband, with full knowledge of an act of adultery committed by him, is legal evidence of a forgiveness of the offence, so as to bar a suit for a divorce.

An act of cruelty alone, on the part of a husband, will not, in this state, revive a condoned adultery, so as to entitle the wife to a decree dissolving the marriage contract.

To revive a condoned adultery so as to entitle the injured party to a divorce, the subsequent misconduct of the defendant must appear to have been of the same character. But the complainant, in a suit for a divorce on account of subsequent misconduct of the defendant, may give the condoned adultery in evidence, in support of the charge for the new offence.

May 26.

THIS was an appeal from a decree of the vice chancellor of the first circuit, granting a divorce. The parties were married at Manchester, in England, in 1825, and came immediately to the city of New-York to reside. The defendant had continued to reside in this state ever since, except about eight months, from August, 1831, to April, 1832, when the parties were in England. The adultery, charged in the bill, was stat-

ed to have been committed at New-York, in September, October, and November, 1830, while the complainant was absent on a visit to her father's, in England; and in June and July, 1831, and in May and June, 1832. The complainant alleged, in her bill, that upon her return from England, in November, 1830, she discovered that from the continued adultery of her husband, he had become diseased. But that she, being a total stranger in this country, and absent from her friends, was compelled to reside with her husband; which residence was not voluntary, and would not have been continued if she could have had access to her relatives and friends, all of whom resided in England. The defendant suffered the bill to be taken as confessed; and the usual reference was made to a master to take proofs of the facts charged in the complainant's bill, and to report the same to the court, with his opinion thereon. The defendant appeared before the master, on the reference, and cross examined the complainant's witnesses as to the alleged charges of adultery, and also for the purpose of showing a condonation, by a voluntary cohabitation with knowledge of the alleged adultery. The master reported the testimony, and also reported that in his opinion the adultery first charged in the bill was proved. But he also reported that he was of opinion, from the evidence, that there was a continued marital cohabitation of the parties after the fact of adultery was known to the complainant, which amounted to a condonation of the offence. The vice chancellor made a decree dissolving the marriage contract, on the ground that the condoned adultery was revived by the subsequent unkindness of the defendant towards his wife. (*See* 1 *Edwards' Ch. Rep.* 439, *S. C.*)

*W. Muloch*, for the complainant. The residence of the husband is admitted, and the residence of the wife, for all legal purposes, follows that of her husband. The facts in this case come within the first and third rules of section 38 of the revised statutes. (2 *R. S.* 144.) Both husband and wife were, in law, inhabitants of the state at the time of the commission of the offence. The offence was also committed within the state; and at the time of exhibiting the bill, the com-

plaintant was an actual inhabitant of this state. The adultery is established. The time, place and circumstances are only material for the purpose of enabling a party to defend, who seeks to form an issue for that purpose; and then they are only required so far forth as the complainant can give them. Adultery can be proved from circumstances, without any direct proof of the fact itself. If this was not so, in many meritorious cases the complainant would fail. It is true that admissions are not alone sufficient, because this would admit of the evil of collusion, which the whole aim of this court is to prevent. But the admission of the defendant to Doct. Smith, that he had the venereal disease, arising from intercourse with women, is not of that character. It comes within another rule of evidence, as being part of the res gestæ, explanatory of the fact and nature of the application to a medical man; as in the case in *Aveson* v. *Lord Kinnaird*, (6 *East's R.* 188,) where the plaintiff's wife was proved to be sick in bed at an unusual hour, just after an insurance was effected on her life; and all the judges held that what she said while in bed, as explaining her situation, was evidence against her husband. The testimony of Captain Allen is only relied on as corroborative of the fact proved by Doct. Smith; and as such it may be received, by the uniform practice of this court. There was no condonation. When a husband commits adultery, and after compelling his wife to live with him, decoys her into the doubtful condonation of apparent good terms, and then treats her with personal violence and abuse, he cannot claim the benefit of such condonation, as no man can claim a benefit from his own fraud.

*John A. Lott*, for the defendant. The jurisdiction of the court of chancery to grant divorces *a vinculo matrimonii* is derived from the provisions of the statute; (2 *R. S.* 144;) by which it is declared that divorces may be decreed:

1. Where both husband and wife were inhabitants of this state at the time of the commission of the offence.

2. Where the marriage has been solemnized, or has taken place within this state, and the injured party at the time of the commission of the offence, and at the time of the exhibit-

ing of the bill of complaint shall be an actual inhabitant of this state ; and

3. Where the offence has been committed in this state, and the injured party, at the time of the exhibiting the bill of complaint, is an actual inhabitant of this state.

The bill in this case does not allege that the parties were inhabitants of this state at the time of the supposed commission of the offence. And it expressly charges the marriage to have been solemnized, and to have taken place at Manchester, in England. It however does allege the offence to have been committed in this state ; and that the complainant, at the time of exhibiting her bill, was an inhabitant of the state. The residence of the husband is not presumed to be the residence of the wife, when she lives separate from him. The residence of the wife must be fixed and certain, to constitute her an actual inhabitant of the state. A temporary residence is not sufficient ; and the court will require satisfactory proof of the allegation, before it will interfere and exercise its jurisdiction. (*Mix* v. *Mix*, 1 *John. Ch. Rep.* 204. *Williamson* v. *Parisien*, 1 *Id.* 389, 391.)

The adultery charged in the bill is not established. The time, place and circumstances charged in the bill are material. (*Codd* v. *Codd*, 2 *John. Ch. Rep.* 224. *Wood* v. *Wood*, 2 *Paige's Rep.* 113. *Germond* v. *Germond*, 6 *John. Ch. R.* 349.) And if material, they must be proved. The statute and rules of court direct a reference to a master to take proof of the facts charged, before the final decree is pronounced. The admission of the party, whether by answer or by suffering the bill to be taken as confessed, is not sufficient.

The object of the statute, in referring the matter to a master, was to prevent collusion ; and all admissions and confessions of the parties are discountenanced, and strong corroborative proof is required to satisfy the court. (*Betts* v. *Betts*, 1 *John. Ch. Rep.* 197. *Palmer* v. *Palmer*, 1 *Paige's Rep.* 276.) But if the adultery, and the time of its commission, are satisfactorily established, yet there is not a particle of proof adduced to show that the offence was committed within this state. This is a material allegation, and necessary to give jurisdiction to the court. (2 *R. S.* 144.) As the jurisdiction of the

court in this case is founded on the allegation that the offence was committed in this state, it is absolutely necessary that the proof should sustain that allegation. (*Mix* v. *Mix*, 1 *John. Ch. Rep.* 204. *Williamson* v. *Parisein, Id.* 389, 391.) Again; there has been a condonation of the adultery, if committed. Subsequent unkindness on the part of the defendant could not revive the right to prosecute for the former adultery. The rule may be otherwise in the ecclesiastical courts in England. But in England, since the time of Elizabeth, divorces *a vinculo matrimonii* cannot be obtained, even for adultery, except by an act of parliament. (*See Rye* v. *Fuliambe, Moore,* 683.) And is there the same reason for such a rule here, as to the effect of condonation, as in England? Is it politic, or is it consistent with good morals, to allow of a conditional forgiveness of adultery to be revived by acts of cruelty, the effect of which is to dissolve the marriage tie? But admitting that forgiveness is accompanied with an implied condition, can that condition be any other than that the party shall not be again guilty of the same, or a similar offence? Such is laid down as the rule, in *Ferrers* v. *Ferrers,* (1 *Haggard's Cons. Rep.* 130,) where condonation is said to be a conditional forgiveness, which does not take away the right of complaint, in case of a continuation of the adultery. The true rule is laid down, in a note to that case. It is thus: that although condonation may be taken away by subsequent facts, they must not be slender facts, but such as would be sufficient to found a sentence. And here it will be proper to bear in mind that our law affords one kind of relief for adultery, and another for ill usage; whereas, in England, the relief in both cases is the same. Now it is well settled that a party cannot charge adultery and cruelty in one bill. The mode and course of proceeding, as well as the nature of the relief, are entirely different. (*Pomeroy* v. *Pomeroy,* 1 *John. Ch. Rep.* 606.) And can it be said that a course of conduct which would only entitle a party to a divorce, *a mensa et thoro,* in one case, can, under other circumstances, entitle such party to another and higher relief, of an entirely different character? All our courts lay down the rule, that subsequent cohabitation, with knowledge of the guilt, is a remission of the offence, and a bar to a divorce.

(*Williamson* v. *Williamson*, 1 *John. Ch. Rep.* 492.) And can a right of action that has been legally relinquished be revived by subsequent events, of a different nature ? What would be the effect of such a doctrine on the practice of our courts ? If cruelty can revive adultery, the acts of cruelty charged become a material part of the complainant's case to entitle her to a divorce. Suppose the defendant wishes to deny both the adultery and the acts of cruelty, how is he to put in his answer? The charges of cruelty he must answer under oath, but the adultery he may deny without oath. And if material to the complainant's right to the interference of the court, it appears to me that the bill should specify the nature and circumstances of the complaint on which she relies, and should set forth times and places with reasonable certainty, so that the defendant could have met them by proofs. In this bill, however, there are only general allegations of cruelty, without stating any particular acts. But the conduct of the defendant towards the complainant was not such as to revive her former rights and remedy, even if it be true that subsequent acts of cruelty will revive a condoned adultery.

In *Oliver* v. *Oliver*, (1 *Hag. Cons. Rep.* 364,) Sir Wm. Scott says, that " the most innocent and deserving woman will sue in vain for the interference of the court, for words of mere insult, however galling, and still less will that interference be given, if the wife takes upon herself to avenge her own wrongs of that kind, and to maintain a contest of retaliation." Again ; in *Evans* v. *Evans*, (1 *Hag. Con. Rep.* 37 *and* 38,) he says, that mere austerity of temper, petulance of manner, rudeness of language, a want of civil attention, and occasional sallies of passion, if they do not threaten bodily harm, cannot amount to legal cruelty ; and that which merely wounds the mental feelings is in few cases to be admitted, where they are not accompanied with bodily injury, either actual or menaced. Sir John Nichol, however, in *Durant* v. *Durant*, says that circumstances would take off the effect of condonation which would not support an original cause ; that though words of heat and passion, of incivility and reproach, are not alone sufficient for an original cause, yet that he could not but think that their

1834.

Johnson
v.
Johnson.

effect would be stronger in condonation ; for that words, otherwise of heat, receive a different interpretation, if, upon former occasions, they have been accompanied with acts: as where it appeared that the party was in the habit of following up words with blows. But in *Westmeath* v. *Westmeath*, (2 *Hag. Eccl. Rep. Sup.* 52,) Sir Christopher Robinson says that Sir John Nichol, in *Durant* v. *Durant*, must have meant that the facts, though slighter than might be required to found or support a sentence of divorce alone, must be such as partake of the nature of legal cruelty, being such in character and effect as might justly revive the fear of an injury attributed to the original act. And Sir John Nichol, in the same case, after reciting the facts of the case, says : The question recurs, whether any subsequent acts took place, forming fresh grounds of legal complaint, or at least reviving former wrongs, and in connection with these former wrongs, containing reasonable and just apprehension of a renewal of ill treatment. The rule as thus explained appears to be, that if the acts of cruelty or misconduct of the party, taken in connection with the former acts of such party, afford a reasonable ground of alarm, then the court will interfere.

Now what is the proof here ? There can be no pretence that the conduct of the defendant was at any time such as to authorize the court to interfere and grant the complainant a divorce, *a mensa et thoro*, prior to, or after the condonation ; and certainly it ought not to be held sufficient to revive a former adultery, which had been once forgiven. But if the conduct of the defendant was reprehensible, and such as to revive the condoned adultery, provided the complainant had not been guilty of improper conduct herself, yet her conduct in this case was such as to give her husband just ground of complaint. It was, at all events, a palliation of his conduct. Such a defence is allowable, upon a bill filed for a limited divorce ; (2 *R. S.* 147, § 53 ;) and certainly it must be held sufficient in the case now before the court. If it was an implied condition of the forgiveness on her part, that her husband should treat her with conjugal kindness, so, on the other hand, it was her duty to treat her husband with kindness and affection, and to

endeavor to remove all apparent cause of difficulty between them.

It will probably be contended that the master had no right to enquire into the question of condonation. But is that so? Has not the complainant, by alleging, in the bill, that her cohabitation with her husband after the discovery of the adultery was involuntary, made that a part of her case? And is it not necessary for her to do away the effect of such cohabitation, by showing that it was involuntary? Without such proof, the complainant, upon the bill itself, would not be entitled to a divorce. The statute, (2 R. S. 145, § 42,) and the 164th rule of this court, contemplate such an enquiry. The order of reference requires the master to take proof of the facts charged in the bill; and every thing that forms a part of the complainant's case is material, and must be proved. The court will notice condonation, though not pleaded nor forming a part of the case made by the bill, if it appears by the evidence in the cause. (*Elwes* v. *Elwes*, 1 *Hag. Con. Rep.* 292. *Durant* v. *Durant*, 1 *Hag. Eccl. Rep.* 747, 751.) Where a man and wife live together in the same house, the presumption is that they were on terms of matrimonial cohabitation. (*Beebe* v. *Beebe*, 1 *Hag. Eccl. Rep.* 796.)

THE CHANCELLOR. If the testimony produced before the master was legal evidence to prove the fact of adultery, the complainant undoubtedly succeeded in showing that the defendant was guilty of the adultery charged as having occurred previous to her return from England, in November, 1830. The parties came to reside in this state in 1825; and they were both inhabitants of the state from that time till August, 1831, notwithstanding the temporary absence of the wife, on a visit to her father, in the summer and fall of 1830. This would have been sufficient to give the court jurisdiction of the case, if a proper averment to that effect had been contained in the bill, whether the adultery was committed here or elsewhere. The residence of the husband is presumed to be the legal residence of the wife until the contrary is shown. And as the complainant returned to this state with her husband in the spring of 1832, where he has continued to reside from

1834.

Johnson
v.
Johnson.

that time, the legal presumption is, that she was an inhabitant of this state at the time of filing her bill, a few months after such return. I am also satisfied, from the fact of the husband's residence here, that the adultery, if any, must have been committed within this state. I am inclined to think, however, that the master was wrong in supposing that there was any legal evidence before him, independent of the mere confessions of the defendant, to show that any adultery had been committed. Although Captain Allen swears he has himself had some personal experience on the subject of a particular disease and as to the appropriate remedies therefor, I do not think his testimony was sufficient to establish the fact that the defendant was laboring under the effects of that disease, on the outward voyage, in the summer of 1831. And the confessions of the defendant, as to his guilt, appear to have been made in a fit of jealousy, and probably with a view to induce his wife to seek a separation. The testimony of Smith, the physician, as to what he discovered and was informed of when he was consulted by the defendant, professionally, in 1830, was illegal and improper, and ought not to have been received. By the revised statutes, a physician is not only excused, but prohibited, as a witness, from disclosing information which he has acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient. (*2 R. S. 406.*) From the testimony, as reported by the master, I infer that Dr. Smith at first declined answering as to what he had thus discovered when consulted in his capacity of physician. But on being told by the master that he was obliged to make the disclosure, he submitted to what he supposed to be a legal duty. Indeed, it is expressly stated in the brief of the complainant's counsel, which was handed up to the court in this case, that the physician declined making any disclosure as to the disease under which the defendant was laboring, until he was compelled by the master to answer. The master mistook the law on this subject. And the testimony being thus obtained in direct violation of this statutory provision, it should be rejected, or laid entirely out of consideration, in de-

ciding whether the adultery charged in the complainant's bill is established by the proofs.

I have recently had occasion to say that this court will in no case dissolve a marriage, if it appears upon the pleadings, or proofs, properly taken, that the injured party, with a full knowledge of the facts, has forgiven the injury. And a voluntary cohabitation is legal evidence of such condonation or forgiveness. In this case there was no proof whatever to establish any act of adultery after the return of the complainant from England, in 1830. And she having stated in the bill, and sworn to the same, that she ascertained the fact of his guilt on her return at that time, and that she had not voluntarily cohabited with him afterwards, it became the duty of the master, under the order of reference, to inquire into those facts, as well as all other matters stated in the bill. The evidence of condonation was, therefore, properly before the court upon the report of the master. That evidence falsified the allegation in the bill that the complainant had not voluntarily cohabited with the defendant subsequent to 1830. It also contradicted the affidavit which must have been made, in conformity with the provisions of the 165th rule, to obtain the usual order of reference. The testimony of the master of the packet shows that there was a continued marital cohabitation between the complainant and her husband while they resided in England, in the latter part of 1831 and the beginning of 1832; and even after they started on their return to this country. It may also be remarked, that during the residence of the parties in England, the excuse of the complainant, that she was compelled to reside and cohabit with her husband, from necessity, because she was among strangers and at a great distance from her relatives and friends, no longer existed. That a condonation of the offence by the reconciliation of the parties, or a subsequent cohabitation with a full knowledge of the facts by the injured party, is a bar to a divorce for adultery, is not only recognized by our statute, but by the laws of most civilized countries. (*Poynter's Mar. & Div.* 231. *Code Nap. Art.* 272. *Van Leeuw. Rom. Dutch Law,* 84. *Oughton, tit.* 214. *Civil Code of Louis. Art.* 149.) It is evident, therefore, that when these parties started from

1834.

Johnson
v.
Johnson.

Liverpool on their return to the United States, in the spring of 1832, the complainant could not have sustained a bill for a divorce on account of any adultery committed by her husband before that time, and of which she had full knowledge previous to such voluntary cohabitation. The vice chancellor arrived at a correct conclusion on this point; but he granted a divorce on the ground of a revival of the supposed adultery, by the subsequent acts of unkindness of the defendant, towards his wife, during the voyage from England to this country. It remains, therefore, to be considered whether the defendant was guilty of any misconduct during that time, which could have the legal effect to revive a condoned adultery, so as to entitle the complainant to a divorce.

It is settled in the ecclesiastial courts of England that condonation is but a conditional forgiveness, and that a repetition of the offence revives the condoned adultery. The same principle was recently recognized in this court in the case of *Smith* v. *Smith*, (*Ante*, 434.) The English courts, however, have gone still further, and have held that to revive condoned adultery, it was not necessary that the new injury should be of the same nature; but that cruelty, desertion, or other improper conduct of the husband towards his wife, was sufficient for that purpose. In following this principle of the ecclesiastical courts in England, I apprehend the vice chancellor has not sufficiently considered the distinction which exists between the laws of this country and of that as to the legal consequences of a conviction for adultery. The ecclesiastical courts in England have followed the canons of the Romish Church, in holding that the bonds of matrimony upon a legal marriage are indissoluble; and that no absolute divorce can be granted, even for adultery. As the consequences of a conviction for cruel treatment or for adultery are the same by the laws of that country, it is not surprising that their courts should consider the forgiveness of the injured party as subject to the implied condition that the other party should not again be guilty of the same offence, or of an offence involving similar consequences. In this state, however, we have followed the ancient law of Holland, in permitting an absolute divorce, in favor of the injured party, in cases of

adultery ; and granting a qualified divorce, or separation from bed and board, merely, for cruelty or other misconduct. (*Van Leeuwen's Com.* 85, § 3.) The Napoleon Code declares the injured party incapable of pursuing an action for a divorce, after a condonation of the offence ; but it permits a suit to be instituted for cause accruing subsequent to the reconciliation, and then allows the former causes of divorce to be employed in support of such new action. (*Code Nap. Art.* 273.) The same law, substantially, exists in our sister state of Louisiana. (*Civil Code of Louis. Art.* 150.) And by the law of Scotland, if the injured party continues the matrimonial connexion after knowledge of the adultery, that is held to be an irrevocable forgiveness of the offence ; and an act of adultery so overlooked, cannot afterwards be the foundation of a process for a divorce. (1 *Bell's Dict. of the Law of Scot. Art. Divorce.*) Upon principle, I am satisfied it would be carrying the doctrine of revival, by subsequent misconduct of the offending party, too far, to permit a suit to be instituted for a condoned adultery, unless it was founded upon a subsequent offence of the like character. It may be said that the principle of revival is useless, if it can only be applied upon the commission of a new offence of the like nature, which would of itself entitle the injured party to a divorce. There may be cases, however, in which this court would only have jurisdiction to decree a divorce for the original offence, which had once been forgiven on the implied condition that it should not again be repeated. In such cases a subsequent offence of the same nature, although committed out of the jurisdiction of the court, and while the parties were not residents of this state, might be sufficient to revive the condoned adultery so as to entitle the injured party to a divorce for such original offence. And where the new offence is of itself sufficient, if duly established, to sustain the suit, the complainant might also, as in France and Louisiana, make use of the fact of the former misconduct of the defendant in support or corroboration of the suit for the new offence.

Even if the vice chancellor was right in supposing that the doctrine of the ecclesiastical courts in England was to be re-

cognized here, in its fullest extent, I am inclined to think there were not sufficient grounds in this case for considering the supposed adultery as revived. And from the testimony of her own witness, I cannot say that the complainant's conduct, on the return voyage from England, was wholly free from censure. After the positive declaration of Captain Allen, on oath, that the defendant's charge against him, of an illicit intercourse with the complainant, was unfounded, it would probably be too much to say that the defendant had any just grounds for charging his wife with such illicit intercourse. Yet from the testimony of Allen, it is very evident that the defendant was actually jealous of the witness' attention to his wife, both before and after they sailed from Liverpool; and that some of the other passengers also thought such attentions to a married woman were improper. The conduct of the husband, during the voyage, may therefore fairly be considered as the natural result of the suspicions he entertained, occasioned by the indiscretion of the complainant in permitting herself to receive such attentions from Captain Allen, when she must have seen the effects they were producing upon the mind of her husband, and the suspicions which were created even among her fellow passengers. The nature of those attentions may be inferred from the fact sworn to by Allen, that one of his passengers told him that if any man was as attentive to his wife he would blow his brains out.

Upon the whole, I am satisfied that this was not a proper case for a divorce, under the statute of this state. That, in the first place, there was no legal evidence to establish the fact that an adultery had been committed. And, if it had been committed, that the suit for a divorce was barred by the subsequent condonation of the offence. The decree of the vice chancellor must therefore be reversed; and the complainant's bill is dismissed.