SARAH LASSITER v. DANIEL LASSITER.

*Divorce and Alimony—Condonation.*

1. In applications for alimony, under The Code, §1291, it is competent for the husband to controvert the allegations of the complaint by affidavit or answer, and the judge must find the facts, and set them forth in the record.

2. Where the facts as found by the judge would, if found by the jury on the final hearing, warrant a divorce from bed and board, they *per se* constitute sufficient ground to award alimony *pendente lite*.

3. Condonation is forgiveness upon condition, and the condition is, that the party forgiven will abstain from like offences afterwards. If the condition is violated, the original offence is revived.

9

LASSITER *v.* LASSITER.

4. Much less cruelty or indignity is sufficient to revive transactions occurring before condonation, than to support an original suit for divorce.

5. In an application for alimony it need not be found as a fact that the plaintiff was a faithful, dutiful and obedient wife.

(*Gordon* v. *Gordon*, 88 N. C., 45, cited and approved.)

Application for alimony *pendente lite*, in an action pending in the Superior Court of RICHMOND county, heard before *Philips, Judge*, at chambers.

There was a judgment allowing alimony, and the defendant appealed.

The facts fully appear in the opinion.

*Messrs. J. D. Shaw, J. W. Hinsdale* and *J. C. Black*, for the plaintiff.

*Messrs. Le Grand & Tillett* and *W. A. Guthrie*, for the defendant.

ASHE, J. This was an application for alimony *pendente lite* in an action brought by the plaintiff against the defendant in the Superior Court of Richmond county, and heard at Chambers by His Honor, *Judge Philips*.

Upon considering the complaint of the plaintiff and the answer of the defendant, and the affidavits offered by both plaintiff and defendant, His Honor found the following facts:

1. That the plaintiff and defendant were married in or about the year 1852, and they have ten children, the oldest of whom is about thirty years of age, and the youngest about seven years of age.

2. That the defendant has offered such indignities to the person of the plaintiff as to render her condition intolerable and life burdensome. That rejecting altogether the acts and indignities mentioned in affidavits not set forth or alluded to in plaintiff's complaint, and considering only those allegations contained in the pleadings, and the affidavits filed in support of those allegations, as well as those in denial, His Honor found the following particular facts:

(1). In or about September, 1880, without any just cause or provocation, the defendant abused plaintiff, called her a liar and choked her.

(2). In or about October, 1880, the defendant, without just cause or provocation, encouraged the children of plaintiff and defendant to mistreat and disobey plaintiff, and told her he would give her fifty lashes if she attempted to exercise any control over said children.

(3). In or about August, 1881, the defendant, without just cause or provocation, threatened to strike plaintiff in the face with a tea-cup, throw her off the steps, wouldn't let her have anything to eat, and wouldn't let her come into the house. That in consequence of such treatment, plaintiff left the house of defendant, and remained away until January, 1882, when, having nothing to live upon, and hoping that defendant might treat her kindly and support her, she returned, when defendant arrayed her children against her, and encouraged them and upheld them in abusing and mistreating her. That defendant continued his threats and abuse until about February, 1882, when he ordered plaintiff to go to the woods to rake straw, and upon her telling him she was unable to do this kind of work, he pulled her out of the house, called for a hame-string, wrapped it around her arm and forced her to the woods in a cruel manner.

(4). In or about March, 1882, the defendant, without cause or provocation, threatened to strike plaintiff in the face with an ear of corn, and did strike her with a brush and inflicted bruises on her person.

(5). In or about May, 1882, one of their children struck plaintiff with a chair, and the defendant shook his hand at her, and told his children to resist any effort on her part to correct them.

3. That by reason of such treatment, plaintiff was forced to leave the house of defendant, and remain away without means of support, except such as she could procure from neighbors and friends. That in January, 1883, she instituted proceedings for divorce and alimony, when she was prevailed upon by defendant

to withdraw said proceedings and return to his house, he promising to treat her with all the respect due from a husband to a wife, and to make his children treat her with respect, and trusting to his promise, she was induced to withdraw her suit and return to his house, which she did in February, 1883.

4. That, in the month of May, 1883, the defendant, without cause, again commenced to abuse and maltreat plaintiff as he formerly did, and he continued this treatment in the presence of their children; that he failed to provide for her; that he did not allow her enough to eat; that he only gave her one cotton dress in the way of clothing; that he borrowed one dollar from her and refused to pay it back; that he would frequently call her "old devil" and "old liar," "no account," in the presence of their children, and encouraged them to abuse their mother.

5. That, by reason of such treatment continued by the defendant, after plaintiff had abandoned her suit for divorce and alimony in February, 1883, and returned to his home by his promises, plaintiff was forced by such treatment to leave defendant's house again.

6. That plaintiff is about fifty years of age, in feeble health, owns no property, and is utterly without means to subsist upon during the prosecution of this suit, and to defray the necessary and proper expense thereof.

7. That defendant owns about three hundred acres of land, and that a fair rental value of said land with the stock and implements thereon is six hundred dollars per annum.

Upon consideration of the above facts, it is ordered and adjudged that the custody of the youngest child be committed to the plaintiff. It is further ordered and adjudged, that the defendant pay into court, for the use of the plaintiff, or to the plaintiff, the sum of one hundred and fifty dollars per annum *pendente lite,* and that the sum of seventy-five dollars be paid on or before the first day of July next, and that the sum of seventy-five dollars be paid on or before the first day of December next.

It is further ordered that the clerk of the Superior Court of Richmond county, issue a copy of this judgment to be served on the defendant, and that if he fails to commit the care of the youngest child to the custody of the plaintiff, or if he fails to pay the sums as above specified, notice shall issue to him to show cause why he shall not be attached for contempt.

From this judgment the defendant appealed, and filed the following exceptions:

The defendant, Daniel Lassiter, excepts to the order of His Honor, Judge Philips, allowing alimony and awarding the custody of the youngest child of plaintiff and defendant to the plaintiff, and assigns as errors in making said order:

(1). That the facts alleged in the complaint, after the condonation, are not stated with such definiteness and particularity, as is required in the petition for a divorce.

(2). That the facts alleged in the complaint, after the condonation, are not sufficient to obliterate the condonation, which is alleged in the complaint, and to revive the transactions alleged to have occurred before the separation or condonation.

(3). That the complaint does not state facts sufficient to entitle the plaintiff to a divorce.

(4). That His Honor refused to find, after being asked by defendant, the facts alleged in second allegation of complaint, viz.: as to whether the plaintiff was "a faithful, dutiful and obedient wife."

(5). That His Honor found as a fact, "that plaintiff was forced by such treatment to leave defendant's house again;" meaning treatment after the condonation, when it had not been alleged in the complaint.

(6). That His Honor found as facts matters that are not sufficiently, definitely, and particularly alleged in the complaint, to-wit: all matters alleged since the first of May, 1883.

(7). That the allegations in the complaint and findings thereon by His Honor, do not entitle the plaintiff to a divorce or alimony.

This action was brought under subdivision 4 of §1286 of *The Code*, which provides, that a divorce from bed and board may be granted when either party "shall offer such indignities to the person of the other as to render his or her condition intolerable and life burdensome;" and in the action the petition applied for alimony, under the provisions of §1291 of *The Code*, which reads, "If any married woman shall apply to a court for a divorce from the bonds of matrimony, or from bed and board with her husband, and shall set forth in her complaint, such facts, which, upon application for alimony, shall be found by the judge to be true, and to entitle her to the relief demanded in the complaint, or other proof that she has not sufficient means whereon to subsist during the prosecution of the suit, and to defray the necessary and proper expense thereof, the judge may order the husband to pay her such alimony during the pendency of the suit, as shall appear to him just and proper, having regard to the circumstances of the parties." And the act provides, in all such cases, it shall be admissible for the husband to be heard by affidavit, in reply or answer to the allegations of the complaint. This proviso was added to the original act, Bat. Rev., ch. 37, §10, by the Act of 1883. Prior to that act the allegations of the complaint were taken to be true for the purpose of alimony, and if they were sufficient to warrant the Court to adjudge a divorce either from the bonds of matrimony or from "bed and board," the Court might award alimony to the petitioner. But since that act the husband may, by affidavit or answer, traverse the allegation of the complaint, and it is made incumbent on the Court to find the facts and set them forth in the record.

This has been done in this case with strict compliance with the act as amended, and His Honor has given his conclusions of law upon his findings, to which defendant filed exceptions.

We are of opinion the exceptions taken by the defendant cannot be sustained, and that there is no error in the judgment pronounced by His Honor upon the facts as found.

The third and seventh exceptions are to the sufficiency of the allegations of the complaint to constitute such a cause of action as would entitle the plaintiff to the relief demanded.

The facts set forth in paragraphs one, two, three, four and five of the findings, we think, are amply sufficient, if they should be found to be true by a jury, to entitle the plaintiff to separation from "bed and board," and that being so, they *per se* constituted sufficient grounds for awarding to the plaintiff alimony *pendente lite*.

But the defendant contended, that even if that be so, the plaintiff has condoned those causes of divorce; and his first and second exceptions are to the effect, that the facts alleged in the complaint to have occurred after the condonation, are too indefinitely stated, and are not sufficient to obliterate the condonation and revive the transactions alleged to have occurred before the separation.

The facts occurring after the separation, and the plaintiff's return to the house of the defendant in February, 1883, as alleged in the complaint, and found by the court, are, that in the month of May, 1883, the defendant, *without cause*, again commenced to abuse and maltreat plaintiff as he formerly did, and he continued this treatment in the presence of his children; that he failed to provide for her; that he did not allow her enough to eat; that he only gave her one cotton dress, in the way of clothing; that he borrowed one dollar from her and refused to pay her back; that he would frequently call her "old devil," "old liar," "no account," in the presence of his children, and encourage them to abuse her.

We think it is expressed with sufficient definiteness, that the defendant failed to supply the plaintiff with sufficient food and clothing; that he used and applied opprobrious epithets to her in the presence of his children, and encouraged them to abuse her, and these were indignities better calculated than anything short of blows, to annoy and wound the feelings of a wife and mother. And this presents the main question in the case, whether such

conduct as this, towards an old and feeble wife, the mother of ten children, was such treatment as was sufficient to obliterate the condonation and revive the original causes of complaint.

Condonation is forgiveness upon condition, and the condition is, that the party forgiven will abstain from like offence afterwards, and moreover treat the forgiving party, in all respects, with conjugal kindness; and, if the condition shall be violated, then the original offence shall be revived. *Bishop on Mar. and Div.*, 53. In *Durant* v. *Durant*, 1 Hag. Ec., 733—731, the condition attached to condonation is defined to be, that the suffering party shall be treated with conjugal kindness. *Westmeath* v. *Westmeath*, 2 Hag. Ec., supp., 1 ; *DeAguila* v. *DeAguila*, 1 Hag. Ec., 781 ; and Mr. Bishop says this may be deemed as settled English law.

In *Johnson* v. *Johnson*, 4 Paige, 460, which was a bill for divorce on the ground of the husband's adultery, which had been condoned, but, to prove the effect of the condonation, the fact was shown on the part of the wife, that though there had been no subsequent adultery, or even actual violence, yet the husband had totally neglected to attend to her comfort, had insulted her with opprobrious epithets and offensive language, and had pursued towards her a course of conduct, calculated to wound her feelings and obliterate her affections; it was held that the condonation had been destroyed. Much less cruelty or indignities are held to be sufficient to revive transactions occurring before condonation, than to support an original suit for divorce. In *DeAguila* v. *DeAguila, supra*, it is held that words of heat and passion, of incivility or reproach, or perhaps of rebuke, though not sufficient to support an original cause, would be sufficient to obliterate condonation, if such words, on former occasions, had been accompanied with acts, especially, if it is apparent, that the party had been in the habit of following up words with blows. To the same effect is *Robbins* v. *Robbins*, 100 Mass., 162; *Johnson* v. *Johnson, supra; Threewits* v. *Threewits*, 4 Desaus., 560; *Gordon* v. *Gordon*, 88 N. C., 45, and cases there cited.

The fourth exception was to His Honor's refusal to find, after being asked by the defendant, "Whether the plaintiff was a faithful, dutiful and obedient wife." This is not one of the issues which the law requires to be submitted to a jury in an action for divorce. There was, therefore, no error in the refusal of His Honor to make a finding upon that question.

The fifth exception was to the finding, by His Honor, of the fact that the plaintiff was forced to leave her husband's home, by his treatment after the condonation, without an allegation in the complaint to that effect. But it was expressly alleged in the complaint, paragraph 5, that in consequence of his treatment, after she had abandoned her suit for divorce and returned to his home, she was forced to leave his house again.

The exceptions were all properly disallowed and there is no error.

The defendant must pay the costs of this Court, and this opinion must be certified to the Superior Court of Richmond county, that the cause may be proceeded with according to this opinion and the law of the land.

No error.                                                  Affirmed.