W. O. WOLFE AND WIFE v. RICHMOND PEARSON.

(DEFENDANT'S APPEAL).

*Action for Damages—Abating Nuisance—Municipal Corporations—Power to Change Grade of Street—Ratification by City of Unauthorized Act of Individual.*

1. Under section 3803 of *The Code*, applicable to all towns and cities, in the absence of other modes provided specially by charter, giving authority to keep in proper repair the streets, etc., of the towns, and by the charter of Asheville (chapter 111, Private Acts 1883), which gives authority to provide for repairing the streets, removing nuisances, and to condemn land for opening, widening and straightening streets, the city of Asheville has authority to change the grade of a street.

2. A city is liable for damages caused by grading streets only when the work is done in an unskillful manner.

3. Ratification is equivalent to a previous authority; therefore the ratification by a city of an act done by an unauthorized person to the injury of another, but which, if done by the city, would have been rightful, relieves such person from liability as a trespasser although the ratification was after suit brought by the injured party.

4. Where a nuisance is both public and private in its effect it may be abated by one to whom it is specially injurious.

5. Where defendant, assuming to act for a city, changed the grade of a street and removed therefrom plaintiff's wall which encroached thereon so as to constitute a nuisance, and the city ratified his acts after suit brought, plaintiff could only recover damages resulting during the time between the act and the ratification.

CIVIL ACTION, tried before *Hoke, J.*, and a jury, at Spring Term, 1892, of BUNCOMBE Superior Court.

The complaint was as follows:

"1. That the plaintiff Julia E. Wolfe, wife of plaintiff W. O. Wolfe, is now, and was at the time hereinafter mentioned, the owner in fee-simple and in possession of certain lot lands in the city of Asheville, county of Buncombe, and State of North Carolina, bounded as follows (here follows description).

" 2. That there were at the time hereinafter named, and have been for many years prior thereto, a street or public highway on the north or front side of said lot and adjoining thereto, and also a street or public highway on the east side thereof.

"3. That about the year 1881 the *feme* plaintiff hereto, while owning said lot of land, obtained from the proper authorities of the city of Asheville what said town authorities informed said plaintiff would be the permanent grade of the said street or Court Square in front of said lot of land and adjacent thereto; and having reference to said grade said plaintiff erected, at cost of about three thousand five hundred dollars ($3,500), a certain brick store-house on said lot, consisting of three stories (including what is called

the basement). That said house was built with special reference to the grade of the said street or public highway in front of the same, and so constructed that the first story or floor thereof was on a level with the grade of said street or public highway, thereby making the same convenient and accessible from said street and suitable for a store-house, ware-room, or for other ordinary business purposes.

"4. That on the _____ day of _____ _____ 1890, the defendant hereto, not regarding or considering the rights of the public in said street or highway, nor the rights of the said *feme* plaintiff in the same, did unlawfully, tortuously and wrongfully commit and make certain common nuisance in said street or public highway by changing the grade thereof, and digging down and lowering the same five or six feet in front of the premises of the plaintiff, above described, thereby leaving the first floor of the plaintiff's store some five or six feet above the level of the street, rendering the same inconvenient and inaccessible and not easy of approach, thereby to a great extent destroying the value of the same and otherwise injuring said property of the plaintiff by the unlawful and wrongful acts aforesaid, to the plaintiff's great damage, to-wit, in the sum of three thousand dollars ($3,000)."

The defendant, Richmond Pearson, answered as follows:

"1. That the defendant has no knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first paragraph of the complaint.

"2. That the allegations of the second paragraph of the complaint, in so far as they relate to a street or public highway on the east side of said lot prior to 1890, are, as the defendant is informed and believes, untrue.

"3. That the defendant has no knowledge of the matters alleged in the third paragraph of the complaint, but is informed and believes, and so avers the facts to be, that these allegations are untrue.

"4. That the allegations of the fourth paragraph of the complaint are untrue.

"5. And for a further defence· the defendant says that if he made any change at any place in the grade of the public square, or any part of it, or of a public street, or any part of it, at any time in said city, he did so with the knowledge, consent, concurrence and approval of said city of Asheville and the proper authorities thereof, which said city and its authorities had the legal right to change such grade or to authorize such change, and such change was afterwards by said city and authorities duly indorsed, approved and accepted.

"6. And for a further defence the defendant says that if he made any change at any place in the grade of the public square, or any part of it, or of any public street in said city, or any part thereof, at any time, such change was duly authorized by those having the legal right to authorize such change, and was made with their knowledge, consent and concurrence and was afterwards approved by them.

"7. And for a further defence the defendant says that if, at any time, he made any change, at any place, in the grade of the public square of said city, or any part of it, or any public street of said city, or any part thereof, such change did not injure the plaintiffs or either of them.

"8. And for a further defence the defendant says that if the defendant did dig any in front of the store-house and lot of *feme* plaintiff he dug down a bank there only and said bank was at that time in the public street at that place, and had been placed there by the *feme* plaintiff, as defendant is informed and believes, and prevented the public from passing and repassing along the said public street at that place, and was a public nuisance, and prevented the defendant from passing along said public street to and from his land, which lay immediately to the eastward thereof, or

nearly so, and within one hundred feet or less thereof, and thereby did the defendant special injury, and the defendant did no more in such digging than was necessary to protect his rights and enable him to reach and pass to and from his said land along said public street and prevent a recurrence to his said land by blocking up the approach to the same as aforesaid.

"9. And for a further defence the defendant says that the complaint does not state facts sufficient to constitute a cause of action."

The issues submitted to the jury and the responses were as follows:

"1. Did defendant wrongfully dig down and remove earth near plaintiff's building, thereby causing damage to plaintiff's property? Answer, Yes.

"2. What amount of damage is plaintiff entitled to receive of defendant by reason of the injury? Answer, Fifty dollars."

The action was to recover damages for injury to a storehouse, built abutting upon the south-eastern corner of the public square in Asheville, N. C., and the title to the property was admitted to be in *feme* plaintiff. There was evidence tending to show that plaintiff W. O. Wolfe, for his wife, had caused the store-house to be constructed on a lot adjoining the south-eastern corner of the public square. The building abutted upon said square, fronting towards the north. The house was built in 1887. Beyond the building, and bounding same on the east, was Market street, which entered the square from the street designated in the plot of the town as a street forty feet wide. There was evidence that at the time this building was constructed this street, known as Market street, was very little used as a public thoroughfare, and was regarded and used only as an alley. The level of

said street was some lower than the square, which it approached from the south at an incline.

There was evidence that said W. O. Wolfe on constructing said building had erected a wall along Market street some eight feet beyond his own lot, and extending north and south parallel to his building and running along Market street into the square eight feet and more, and had filled in the wall so as to level so much of Market street to the level of his store building, and to the level of the public square in front of his building.

That before bringing this suit and prior to the acts of the defendant herein complained of the approach to said store building from the square was on a level, but the approach to the building from Market street was made inconvenient by the wall, which was vertical from the last approach from two to three feet, the wall leaving an entrance of thirty-two feet. Approach from Market street to square was not otherwise impeded. Plaintiff W. O. Wolfe testified that before building this wall he had obtained permission from the Board of County Commissioners. He also testified that before commencing his building he had spoken to a member of the Board of Aldermen and to one of the street committee for information as to the grade of the public square where it bounded his lot, and was referred by them to one Mr. Aston, who was at that time city engineer, and so acting, on such reference, witness applied to Mr. Aston and was informed by him that the grade was as witness then found it.

The charter and amendments of the city of Asheville were introduced, showing the grade of the streets to be in control of aldermen.

There was also evidence tending to show that sometime about one month or more before bringing this action, to-wit, in November, 1890, defendant, who had bought prop-

erty in a part of the city that could be approached along
Market street, and desiring to enhance the value of his pur-
chase by making greater facility of access thereto, hired a
number of hands and against the protest of plaintiffs dug
down and hauled away a part of the earth from the public
square in front of plaintiffs' building, and tore away and
removed a part of the wall built by plaintiffs, which ex-
tended along Market street into the square, designing and
intending to make the approach from Market street into
the square on a less incline and easier grade.    That the
excavation came within eight feet from front door of plain-
tiffs' building, causing an average depression of thirty-five
inches, making the approach from the square much more
inconvenient.    The public square at this place was proved
to be seventy-five yards wide or more.    There was evidence
of plaintiffs tending to show that the action of the defend-
ant had injured the value of plaintiffs' building as much
as twenty-five hundred or three thousand dollars; that
the rental value was reduced one-half, and that it would
cost at least $2,500 to lower house to present grade of street,
which was the only feasible way to repair the injury.
There was evidence on part of the defendant tending to
show that the action of the defendant had benefited the
property by making the approach better from Market
street and by placing the plaintiffs' building as a corner
store upon the square and Market street, and rendered a
frequented thoroughfare by the action of the defendant.
There was also evidence tending to show the time and cost
required to replace the earth.    Defendant also placed in
evidence the act of the Board of Aldermen of the city of
Asheville taken after the injury complained of and after
action commenced, establishing grade of street at the level
made by the defendant.

The act of the Board of Aldermen referred to is as follows:

"MAYOR'S OFFICE, January 9, 1891.

\*          \*          \*          \*          \*          \*          \*          \*

"The attention of the Board being called to the fact that Richmond Pearson had, at his own expense, widened the northern entrance to Market street and had used some stone belonging to the city for the purpose of making steps to the front of certain stores on south Court Square; and it being the opinion of the Board that said work and the use of said stones was one of public necessity and convenience, the same is therefore approved by the Board."— Minutes, page 91..

The evidence is set out in the case, but it will be unnecessary to state it here: in addition to that which has already been referred to there was evidence on the part of the defendant tending to prove that before doing the work defendant "asked the Mayor of the city, who went with witness to the work, and he told witness to go ahead and tear it down; it was a nuisance. Afterwards, learning that the Mayor probably had no authority, reported the whole matter to the Board of Aldermen as to what he had done," and hence the action of the Board.

The Court charged the jury as follows:

"That plaintiff claims in the action damages for injury to his building by defendant. Defendant claims that he has done plaintiff no actionable wrong: (1), because he was abating a nuisance; (2), because the action of the Board of Aldermen of the city of Asheville on January 9, 1891, approving act of defendant as aforesaid, related back and justified the conduct of defendant.

"Neither position can be maintained by defendant on this evidence, and if the jury believe the evidence they will answer the first issue Yes."

There was a verdict for plaintiff. Motion for a new trial by defendant for errors of Court in its rulings on questions of evidence and for error on charge in holding that the action of the city authorities did not protect defendant, and in holding the defendant on the entire evidence could not maintain his position that he was acting in lawful abatement of nuisance. Motion overruled and defendant excepted. Judgment on verdict for plaintiff. Appeal by defendant.

*Messrs. Charles A. Moore* and *Gudger & Martin*, for plaintiffs.

*Mr. F. A. Sondley*, for defendant (appellant).

MACRAE, J.: It will not be necessary to consider in their order the objections to evidence and exceptions thereto, as the case will be disposed of in the consideration of the errors alleged in the instructions of his Honor to the jury.

The defendant rested his defence on the merits upon two grounds: (1), because he was abating a nuisance; (2), because the action of the Board of Aldermen, approving his act, related back and justified the conduct of defendant. His Honor held that neither position can be maintained by defendant on the evidence, and he directed the jury if they believed the evidence to answer the first issue "Yes."

We have examined the acts constituting the charter of Asheville in force at the time of the act complained of and the general law concerning cities and towns, and find that, by section 3803 of *The Code*, applicable to all towns and cities unless other modes are expressly provided in the charter, the commissioners "shall provide for keeping in proper repair the streets and bridges in the town in the manner and to the extent they may deem best." By the charter of Asheville, ch. 111, Private Acts of 1883, sec. 19,

among the powers expressly. given to the Board of Alder-
men are to "provide for repairing and cleansing the streets
and sidewalks," also "to suppress and remove nuisances."
And by sections 37 and 38 an elaborate system is provided
for the condemnation of land for streets and the assessment
of benefits and damages, "whenever in the opinion of the
aldermen it is advisable to obtain land or the right of way
in the city for the purpose of opening new streets or widen-
ing or straightening streets already established or for mak-
ing of culverts or water-ways for carrying water out of the
streets."   But we have been unable to find any special pro-
vision, however desirable it may be that some special pro-
vision should by law be made, for the grading of the streets,
and the assessment of benefits and damages arising upon
the change of such grades.

   This city has, then, special power and the general powers
incident to all towns and cities for keeping its streets in
repair, which powers would, in our opinion, include authority
to make such changes in the grading of its streets as the
Board of Aldermen might deem necessary; and that the
city was only liable for damages caused by such grading
when the work was done in an unskillful manner.   *Meares*
v. *Wilmington*, 9 Ired., 73; *Wright* v. *Wilmington*, 92 N. C.,
156.   It is equally clear that one, acting for himself and
without authority from the Board of Aldermen, who under-
took to change the grade of a street, would render himself
liable in an action by the party injured for such damage
as might have been sustained by the owner of lands or
buildings upon said street, by reason of such assumption
of the functions of the city by him.   And if such person
assumed to be acting for another than the rightful authority
such other person might ratify the act after it was done,
and so become a joint trespasser with the wrong-doer him-
self.   .

But the effect of a ratification by the city of an act done by an unauthorized person under color of authority from the city, which act, if it had been done by the city itself, would have been rightful, would be to relieve such person from liability as a trespasser. A municipal corporation has, by its charter, granted to it certain portions of the sovereignty of the State, for the purpose of assuring to the people the right of local self-government. It acts under delegated authority, and within the scope of its powers it represents the sovereignty itself.

And the fact that the ratification of defendant's act was done after action brought against him by the plaintiffs for the injury sustained, cannot affect the result of such ratification. "The rule of law is that he for whom a trespass' is committed is no trespasser unless he agrees to the trespass; but if he afterwards agrees to it his subsequent assent has relation back, and is equivalent to a command, according to the well-established maxim, *omnis ratihabitio retrotrahitur et mandato priori æquiparatur.*" *Hall* v. *Pickersgill,* 5 E. C. L. Rep., 83.

The city had the right to grade the street, and by its subsequent assent it has in effect commanded the act complained of; if it were a person who had no right to do the act and the same were done in its behalf it would be a joint trespasser with defendant, but having that right the defendant is relieved of liability if he assumed to do it for and on behalf of the city. The city has assumed any liability which may have accrued to defendant and now this liability would be only for injuries sustained by reason of unskillfulness in the work.

This doctrine of ratification will in some instances apply to torts as well as to contracts. One may under some circumstances adopt a wrong and become a wrong-doer by ratification, as where one acts for another, *not assuming to*

*act for himself, but for the other person,* without any precedent authority, and afterwards the act is ratified by the principal. Cooley on Torts, 127. "If an individual ratifies an act done on his behalf the nature of the act remains unchanged; it is still a mere trespass, and the party injured has the option to sue either; if the Crown ratifies the act, the character of the act becomes altered, for the ratification does not give the party injured the double option of bringing his action against the agent who committed the trespass or the principal who ratified it, but a remedy against the Crown only (such as it is), and actually exempts from liability the person who commits the trespass." *Buron* v. *Denmar,* 2 Exc. Rep., at p. 188.

So, an act which, if done by the individual, may be a trespass, but which if done by proper authority is lawful, may be ratified by such authority when it was done in its behalf. For instance: Defendants, creditors of an uncertificated bankrupt, seized his goods to hold for the assignee not yet appointed; this act was ratified by the assignees, who had a right to seize them; and although this ratification was done after action brought by the bankrupt against the trespassers it was held that the defendants were not liable to plaintiff. *Hall* v. *Pickersgill, supra.*

It must be an act which would have been lawful if done by proper authority, for, where a State Tax-collector seizes property in satisfaction of taxes, refusing to accept in payment certain coupons, according to a statute of Virginia, he is liable for trespass because the act was void. *Poindexter* v. *Greenhow,* 114 U. S., 270.

The learned counsel for plaintiffs, contending that the city could not ratify the act of defendant, especially after suit brought, rely upon *Page* v. *Belvin,* 14 S. E. Rep., 843; but in that case it was held that by the terms of the charter of the city of Richmond the grading of streets could

not be done until there had been a resolution or ordinance of the city council *previously* enacted directing the improvement to be made; the act would have been unlawful if done by the city in any manner except in that prescribed by the charter; therefore the city could not ratify an act which it was not authorized to do itself. "The council can only act by previously enacted ordinances." In this case it was also held that by reason of the injury a right of action against defendants had vested, and upon settled principles it could not be divested by subsequent action of the council. In the case before us the city of Asheville could have graded the street under its powers in the charter, without such previous action. If the grading was done by one assuming to act for it such act, upon equally well-settled principle, was subject to ratification, and such ratification, as we have seen, had relation back to the act itself, and took away no vested right, because the right to recover damages was subject to be defeated by the subsequent ratification.

The same distinction will be found in all other cases cited for this position, for in each of them the act or contract was not in its origin binding upon the corporation by reason of not having been made in the mode prescribed by the charter, and therefore not a subject of ratification. In *Zottman v. San Francisco*, 20 Cal., 102, cited by plaintiffs' counsel, it was said: "Ratification is equivalent to a previous authority; it operates upon the contract in the same manner as though the authority to make the contract had existed originally." There having been some evidence tending to show that the defendant assumed to act for the constituted authorities of Asheville, it follows that when his Honor held that defendant's contention could not be maintained upon the evidence as to the ratification and its relation back to the alleged wrongful act, he did not

advert to the testimony tending to prove that defendant assumed to act for or on behalf of the city; this was a material fact to be passed upon by the jury, and in case they found it in favor of defendant he would have been entitled to the instruction.

As to the question whether the defendant was liable for the removal of the wall and earth which had been erected at the opening of Market street into the public square, his Honor held that upon the evidence defendant could not relieve himself from liability to plaintiffs upon the ground that he was abating a nuisance. As the acts of grading the street and of removing the wall may be separated, it is important to inquire whether this wall and the earth packed between it and plaintiffs' line, upon the street, was a nuisance, and could defendant have abated it? Without going back to a discussion of what constitutes a nuisance in general, we may say, as applicable to our present case, that any permanent obstruction of a street or road, a public highway, by which the public are impeded in their passage over said highway, is a nuisance, and that according to the evidence this wall and filling in, erected upon the street or public square, certainly in the absence of any express authority from the Board of Aldermen to do so— and this authority cannot be proven by testimony to the individual consent of one or more members of the Board— was a public nuisance, because it obstructed a portion of the street or square. *State* v. *Long,* 94 N. C., 896.

It was broadly stated in *State* v. *Dibble,* 4 Jones, 107, that any unauthorized obstruction in a navigable stream by means of a bridge or a dam of any kind is a public nuisance which any one may abate. This proposition is qualified by Mr. Justice READE in a case of much the same character, *State* v. *Parrott,* 71 N. C., 311: "A common or public nuisance may be abated by *any person who is annoyed*

*thereby.*" And this was a most proper qualification, for although the first expression has been often used by the Judges, it was applied to the special facts then under consideration. It would be a proposition most dangerous to the peace of communities to say without qualification that any one may abate a public nuisance. As we are not attempting to write a treatise or a text-book it will not be necessary or proper for us to discuss the subject of the abatement of nuisances in its ever varying phase; our province is to apply known principles already established to the facts of particular cases. It would not be difficult to demonstrate the general rule to be that as to nuisances entirely public no private person has a right to abate them, and it is very well established that where a nuisance is both public and private in its effect it may be abated by those to whom it is a private nuisance. We do not undertake to lay down any general rule as to how far the individual may go in the abatement of the nuisance which is an injury to him. Suffice it to say that his Honor should have instructed the jury that the encroachment upon the street or square, not being proven to have been authorized, was a public nuisance. And upon the evidence it was a question to be submitted to them under proper instructions whether *this* encroachment upon the public highway was specially injurious to defendant, for upon the determination of this question rested his right to remove it without resort to an action. We refer to 2 Wood on Nuisances, chapter 21, for an interesting and instructive discussion of the subject of abatement of public nuisances by act of private persons, and an industrious collection of authorities thereon. There must be a new trial.                    Error.

## (PLAINTIFFS' APPEAL).

The plaintiff made the following exceptions to rulings of the Court on the admissive and objective evidence :

1. On cross-examination plaintiff was permitted, over objection by his counsel, to give to jury the description of the store and ground prior to the injury complained of. Plaintiff objected.   Overruled, and plaintiff excepted.

2. Witness Lee was allowed to testify that defendant owned property across from plaintiff on Market street, and that access to it was made less convenient by plaintiff's wall.   Plaintiff excepted.   This evidence was admitted at the time over plaintiff's objections on the position maintained by defendant that the plaintiff's wall was a nuisance, which defendant had a right to abate.   The Court, being of opinion, on the whole evidence, that defendant had shown no such nuisance as would justify his action, so ruled, and the effect of this evidence was withdrawn from the jury.

3. This witness was also allowed to testify, over plaintiff's objection, the time and cost required to put square, etc., in condition it was in prior to the injuries.   Plaintiff excepted.

4. Defendant Pearson was allowed to testify that the action of the defendant had enhanced the value of plaintiff's property, describing how the change of grade was beneficial.   Plaintiff objected.   Overruled, and plaintiff excepted.

5. The minutes of the Board of Aldermen were read establishing grade of street at present level.   Admitted, and plaintiff excepted.   This was admitted on the claim of defendant that he could show authority from the city for his act, but the defendant having failed to show such

authority or that he claimed to act pursuant to such, it was decided that the resolution of the Board of Aldermen was no protection to defendant, and the effect of the evidence was withdrawn from the jury. The connection of evidence will more fully appear in the copy of entire evidence made by the Clerk.

The plaintiff requested the Court for the following instructions:

"1. That the plaintiffs are entitled to recover in this action for damages arising both before and after suit; that any damage found to be done to the property of the plaintiffs by reason of the defendant's cutting down the street are original and can be recovered for as full compensation in this action.

"2. That if from the evidence the jury shall find that the defendant cut down the street willfully and wrongfully and with malice to the plaintiffs, and wickedly and without regard to the rights of the plaintiffs, they can find such punitory or vindictive damages as they shall find ought to be paid.

"3. That if the jury find from the evidence that the plaintiffs' property has been made worth less than before in money by reason of the defendant cutting down the street in front of it, the damage would be such permanent and original damage as would entitle the plaintiffs to recover full compensation in this action."

The Court explained the nature of the action, stating among other matters not objected to:

"1. That plaintiff claimed in this action damages for injury to his building by defendant in digging down and carrying away the earth from the public square adjacent to his property. Defendant contended that he had done plaintiff no actionable wrong:

"(1). Because he had authority from the city of Ashe-

ville for his conduct, or such conduct had been subse-
quently ratified by the city.

"(2). Because he was removing a nuisance; that neither
position could be maintained by the defendant, and on the
evidence, if the jury believed it, they should answer the
first issue 'Yes.'

"2. Measure of damages was the cost of replacing the
earth as far as its removal worked an injury to plaintiffs'
property, and the inconvenience working pecuniary injury
to plaintiffs in use of building for the time required to
replace the earth under all circumstances of the case. This
inconvenience could be estimated in this case by the
impaired rental value of the property for the time the earth
was necessarily away, there being no evidence of actual
loss of rents for such time.

"3. Evidence as to increased or diminished value of
property not to be considered by the jury in question of
damages to property as a building site. Only considered
on value of building as tending to show increase or dimi-
nution of rental value for the time building remained in
its injured condition.

"4. Damage not entire loss to building. As between the
parties plaintiffs had a right to replace the earth, and the
subsequent order of the city authorities making the change
permanent was not the act of Pearson. The city authori-
ties have control of the grade of their streets, when acting
in their judgment, and for this defendant is not responsi-
ble. But their action in this instance would not relate back
so as to justify the conduct of defendant, who neither acted
nor claimed to act under their authority. and the rule for
damages was as above given."

There was verdict for plaintiffs as set out on record.
Plaintiffs moved for a new trial for errors of Court in its
rulings on question evidence, and for error in the charge in

measure of damages. Motion overruled and plaintiff excepted.

Judgment on verdict and appeal taken.

Plaintiffs excepted for that the Court erred:

"1. In overruling the plaintiff's objection to evidence and admitting the same over his said objections, as hereinbefore specified.

"2. In refusing to admit certain evidence offered by them, as hereinbefore specified.

"3. In refusing to give the instructions prayed for by the plaintiffs, as hereinbefore set forth, to-wit, in refusing to give prayers for instructions Nos. 1, 2 and 3.

"4. In instructing the jury as follows: 'That the measure of damages was the cost of replacing the earth as far as its removal worked an injury to plaintiffs' property and the inconvenience working pecuniary injury to plaintiffs in use of building for the time required to replace the earth.'

"5. In instructing the jury that the damage of plaintiffs was not the entire loss to the building, as between the parties the plaintiffs had the right to replace the earth, and the subsequent order of the city authorities making the change permanent was not the act of Pearson; that the city authorities have control of the grade of streets when acting in their judgment, and, for this, defendant is not responsible."

MACRAE, J.: The conclusion we have reached upon defendant's appeal renders it unnecessary that we should consider any of plaintiffs' exceptions other than those directed to the charge of his Honor upon the measure of damages.

We are of the opinion that there is no error of which the plaintiffs can complain in the instructions given, and defendant's appeal did not show any exception to this part of the charge. As it appeared upon the trial that the

removal of the wall and earth and the grading of the street had been adopted by the city and consequently that the earth and wall could not be replaced, it would be difficult to compute any other damage resulting to plaintiffs than such inconvenience as may have arisen and existed between the time of the act complained of and the adoption thereof by the city.  There was no testimony upon which the jury could have been instructed that they might give vindictive damages.                                          No Error.