GEORGE H. CLIFTON et al. v. D. I. FORT.

*Dower—Evidence—Lost Record—Possession.*

1. Secondary evidence will be admitted to show the contents of a lost or destroyed record.

2. The petition and writ of dower endorsed "executed," is evidence to be submitted to the jury, in connection with other facts *dehors* the record, in determining an issue whether dower had been assigned, proof having been offered tending to show that the remaining part of the record had been destroyed.

3. The acts and declarations of persons in possession of land, and of those under whom they claim, are admissable against them to show the circumstances under which they entered, and in explanation of the estate claimed by them.

4. The fact that a widow resided on the land of her husband for some-
time after his death, and that others who entered under her spoke
of and claimed it as her "dower," is evidence, in connection with
other circumstances, to be considered by the jury in ascertaining if
the dower had been actually allotted.

(*Mobley* v. *Watts*, *ante*, and *Nelson* v. *Whitfield*, 82 N. C., 46, cited
and approved).

This was a CIVIL ACTION for the recovery of land, tried
before *Shepherd, Judge*, at the Spring Term, 1887, of WAKE
Superior Court.

The material issue was:

"Are the plaintiffs the owners and entitled to the posses-
sion of the land in question."·

It was conceded that they were the heirs-at-law of one
Azel J. Clifton, called John Clifton, who died in 1827, seized
of a tract of land in Wake county, which included the land
in controversy, and that he left surviving him his wife
Mary Clifton, who continued to reside upon the land for
about a year after the death of her husband, when she, with
the plaintiff, moved to Georgia, where they have resided,
and where she died on the 29th day of May, 1880. The
plaintiffs are the heirs-at-law of Azel J. Clifton.

This action was commenced on the 17th of February, 1887,
and the material question was whether the land mentioned
in the complaint had ever been assigned to said Mary as
dower.

For this purpose, the plaintiffs introduced the petition of
said Mary, made at the May Term of the County Court of
Wake, 1827, praying that her dower be allotted her. Also a
writ of dower ordered at said Term, returnable to the August
Term, on which writ there was endorsed the word "Exe-
cuted" by the sheriff.

The plaintiff also introduced Charles D. Upchurch, who
testifies that he is and has been clerk of the Superior
Court of Wake county for ten years, and had been in the

office as deputy clerk from 1874 to the time he went in as clerk; that the records of the County-Court as found by him in the office, are incomplete; that he has frequently missed many papers; that during the war, when Sherman took possession of Raleigh, some Federal soldiers took all the papers and records to an old field near Raleigh and were about to burn them, when they were prevented by a passing Federal officer; that the papers and records were brought back in barrels and tumbled down on the floor in the court-house, and were much exposed; that afterwards the county had the papers classified. Witness stated that he had made diligent search in his office and could find only these papers relating to the case; that the trial docket of said Court, which included the entries for the year 1827, was lost, but witness produced the minute docket for that year. Witness testified that upon inspecting the records, he found that entries in dower proceedings appeared upon both dockets; that the trial docket would show that petitions were filed, writs ordered, reports made and confirmed, and that the minute docket also showed all these proceedings, but the entries in same proceedings do not always appear in both dockets, but no proceedings appertaining to the allotment of dower to the said John Clifton's widow appeared upon the said minute docket, or upon any other docket found in the clerk's office; that the general index of all dower proceedings were searched, but nothing relating to this proceeding was found; but no index was kept of dower proceedings until 1876.

W. S. Powell testified he was sixty-seven years old; that since the death of Azel J. Clifton he always heard those in possession of the *locus in quo* claim it as the dower of Mrs. Clifton, and it always went by that name; that he knew of Zack Smith being in possession after Mrs. Clifton left, probably about 1830; that he claimed it as the dower of Mrs. Clifton; that Wilson Etheridge succeeded Zack Smith (I think he bought it); that Lenten Etheridge succeeded Wil-

son Etheridge; that one Jordan succeeded him; that Jordan was succeeded by John C. Avera, who rented it to Jordan and some negroes; that John C. Avera sold that part of the dower land lying east of the Wilmington and Raleigh road to Wm. C. Fort; the deed from Avera to Fort, dated January 5th, 1883, conveyed the land in dispute " during the lifetime of John Clifton's (deceased) widow," with warranty, " so long as said widow doth live," &c.; that all these persons spoke of and claimed it as the dower land of Mrs. Clifton, and that Wm. L. Fort always kept the dower interest separate from his own land; that he cleared some of his adjoining land and left the line trees of the dower tract, and put his fence on his land, so, he said, the heirs could not get his· fence; he claimed it as the dower land. Witness identified the land sued for as the land he had been speaking of, and testified as to the boundaries.

David Lewis, the administrator of Wm. L. Fort, who died in 1876, testified that he was sixty-four years old, and had known the land all his life; that he had known the land pretty much since Clifton died; that he had worked for Zack Smith and Etheridge, and they called the land widow Clifton's dower; that when he sold as administrator in 1878 he stated that he sold only the dower interest.

There was other testimony corroborating the statement of these witnesses.

It was also in evidence that about forty years ago, the heirs of Clifton offered to sell their interest to Wm. L. Fort in the dower, and he said he did not want to buy it, as the widow was young and would live as long as he.

It was also in evidence that said administrator sold the land to D. I Fort, the defendant, son of Wm. L. Fort.

The defendant testified that he had been in possession of the land ever since, claiming it adversely and as his own. Upon cross-examination he said he knew it was called the dower land of Mrs. Clifton, and that he knew his father

bought Mrs. Clifton's interest; that he did not know what her interest was; " I thought the heirs would never be heard from, and it would be a good speculation."

The defendant objected to all of the foregoing evidence as incompetent and insufficient, because dower had not been shown by the record, and a sufficient foundation had not been laid for the introduction of parol testimony tending to establish it.

The Court overruled the objection, and the defendant excepted.

The defendant asked the following instructions of the Court:

1. There was no legal evidence to go to the jury showing that dower was laid off by metes and bounds or otherwise to Mary Clifton.

The Court declined and defendant excepted.

2. That the petition for dower, the writ and the return of the Sheriff, in the absence of a report and confirmation, are not legal evidence of the fact that any dower was laid off by metes and bounds.

The Court gave this instruction, but stated that the jury might consider it in connection with the other testimony, as the loss of the records, the search for them, the occupancy of the various persons and their acts and declarations, and other circumstances tending to establish the dower.

The defendant excepted to this qualification.

3. That the recitals in the deed of Jno. C. Avera to Wm. L. Fort are not evidence against this defendant to show that the dower was laid off.

The Court stated that if they believed that said Fort entered under this deed, that it was proper for the jury to consider it in connection with his acts and declarations.

The defendant excepted.

4. That there is no evidence to show that the widow has ever been in possession of the *locus in quo* since the death of

A. J. Clifton, except for about one year after his death. And there is no evidence to show that the said widow was in possession of the *locus in quo* by metes and bounds, or that she was not in possession of the whole tract.

The Court said there was no positive and direct evidence as to these matters, but that they might, if they chose, infer it from the evidence before them.

Defendant excepted.

5. That the evidence from the records and the witnesses is too vague, uncertain and indefinite to show that dower was ever laid off.

The Court declined. Defendant excepted.

There was a verdict and judgment for the plaintiffs, and defendant appealed.

*Mr. J. H. Flemming*, for plaintiffs.
*Mr. Samuel Wilder*, for defendant.

DAVIS, J.   If the land in question was not allotted to Mary Clifton, widow of the ancestor of the plaintiff, they cannot recover; if it was so allotted, there could be no adverse possession as against the plaintiffs till the death of the widow, and as she died on the 29th day of May, 1880, and this action was commenced on the 17th day of February, 1887, the question of the statute of limitations is not material.

1. We think the loss of the record was sufficiently shown by the testimony of the clerk, and that secondary evidence was admissible to supply the loss. The question raised by the objection to the competency of such evidence in cases of lost records is fully considered in the case of *Mobley* v. *Watts*, decided at this Term, and we refer to that case and the authorities there cited. This disposes of the exceptions to evidence, and to the first prayer for instructions, and also to the second, as qualified by his Honor.

2. The third exception is to the charge of his Honor in relation to the deed from Jno. C. Avera to Wm. L. Fort. The deed from Avera to Fort, made January 5th, 1839, conveys the land in dispute, "during the lifetime of John Clifton's deceased widow, and warrants the right and title of said land to said Fort, his heirs and assigns, so long as the said widow doth live, against the lawful claims," &c.

Wm. L. Fort, by this deed, took only an estate for the life of the widow of John Clifton, and when the land was sold in 1878 by David Lewis, administrator, &c., of Wm. Fort, under a judgment of the Superior Court of Wake against the heirs-at-law of Wm. L. Fort, (David I. Fort, the present defendant, being one of them) it was stated by the said David Lewis that he sold only the dower interest, and both Lewis and Powell testify that the persons in possession always recognized the land in dispute as the dower of Mrs. Clifton. They spoke of it and claimed it as the widow's dower; and Wm. L. Fort, who by his deed held only an estate for the life of the widow, recognized the title of the heirs and claimed only the dower, and it is in evidence that the defendant himself knew that his father bought only Mrs. Clifton's interest—that it was called her dower. These admissions of the parties in possession are admissible to qualify their title, and to show that they had an estate only for the life of the widow. *Nelson* v. *Whitfield*, 82 N. C., 46. There was no error in admitting the deed from Avera to Fort, as qualified in the charge of his Honor, and this disposes of the third exception.

3. The evidence shows a well defined tract of land, known and recognized as the widow's dower by successive purchasers, including the defendant himself, who claimed only the dower interest or life estate of the widow, none of them asserting any claim to the reversion; and there was no error in telling the jury that they might, if they chose, infer from the evidence before them that the widow was in possession

of the *locus in quo* by metes and bounds, and not of the whole tract. In fact, the evidence tends clearly to show that she, and those claiming the dower interest under her, were in possession from the death of her husband to the time of her own death.

The fourth exception cannot be sustained.

4. There was evidence from the records and the witnesses tending to show, and from which the jury might be at liberty to find, that the dower had been allotted, and there was no error in refusing to give the fifth instruction asked for. There is no error.

No error.                                          Affirmed.