Verdict and judgment for the defendant. Plaintiff appealed.
The plaintiff, in support of his title to the land described in his complaint, produced in evidence:
1. Proceedings for partition of land of one Edward E. Moore among his heirs at law in 1825, and the allotment of share B to Stephen L. Moore in the court having jurisdiction.
2. A deed from said Moore, made on 8 November, 1832, to Maurice Baugham for the same land.
(235) 3. A deed dated 1 November, 1848, from said Baugham therefor to Joab Outland.
4. A deed from the latter bearing date 8 December, 1866, to Alanson Capehart, one of the defendants, executed also by the plaintiff, upon certain trusts, and among them that the property conveyed, both personal and real, after payment of debts, and the proceeds of such as may be sold, be paid and delivered to the plaintiff, he undertaking to provide for and support the said Joab, his father-in-law, and wife, Julia, during the life of each. It was in evidence that the plaintiff had taken care of both, furnishing board and clothing as for members of his own family, until the death of said Joab in 1865, and the death of his wife, who survived him and died in October, 1878, and provided for the burial of *Page 199 
each. The plaintiff offered further testimony tending to show that the said Joab said to William Mann and his wife, also a daughter and a defendant, "he had beat the race, and that (referring, as we understand, to the land) was a home for them, and to go and live on it," and they were in possession in 1881.
It was also in proof that the said Joab lived near Roxobel, in Bertie, before 1850, and the plaintiff worked there; that plaintiff moved to Roxobel, and Joab and his wife moved there and lived with him, and that all of them moved to Rich Square, in Northampton, between 1850 and 1860 and there lived as one family.
The deed in trust conveys two tracts of land in Northampton, eight slaves, all the products of the farms and stock and farming implements, and all debts due the grantor to Capehart, who, after payment of debts, is required to deliver over the proceeds to the plaintiff "for the consideration of the said Conwell supporting him, the said Joab, and his wife, Julia, in a decent and comfortable manner during their each and separate lives," with condition to return the property if he fails to do so, and this obligation the plaintiff enters into in becoming (236) a party to the deed.
In a separate instrument, under seal, made on the same day by all the parties, and forming part of the deed, it is provided that if not required to be sold for the debts the slaves may be delivered over with the proceeds of such of the property as has been sold to the plaintiff, upon the same trusts and conditions.
It is stated in the case to have been admitted that deeds introduced subsequent to that to Capehart (of whose import this brief mention conveys the only information we have of them) describe the same land.
The defendants offered in evidence a deed from the Sheriff of Northampton to Jason Lassiter, dated 25 August, 1843, and to prove that it described the land in controversy. The deed, a copy of which is said to accompany the case as Exhibit "A," is not sent up, and we can only arrive at its contents by conjecture, and from what is said about it in the deed from Baugham to Outland of 8 November, 1848, which is Exhibit "A."
This latter, in its recitals of the considerations and inducements to its being made, uses these words: "As also to remove any doubt that may exist as to the title to the premises hereinafter described, under a sale and deed from the sheriff of said county to one Jason Lassiter, by whom the same was conveyed to the said Joab Outland, have bargained," etc.
The admission of the deed of Lassiter was opposed on the ground that it sets out a levy by the sheriff on the land of Baugham, by virtue of several judgments rendered by a justice (executions we must suppose to *Page 200 
have been meant), and it was "not competent to show, even by producing the levies, that he levied on any particular lands."
The evidence was presently received, the court reserving the question as to the effect of the deed.
James Langford testified for the defendants that Baugham (237) lived on the land now in the occupation of the defendant Cherry in the year 1843, just before which witness built the house thereon, Baugham in the meantime cultivating the land and residing with a brother.
John J. Muldrow testified to the fact that William Mann entered into possession of the land in 1849, but does not know if he paid rent for the use of it.
The clerk of the Superior Court testified to his search among the records for the executions issued on the judgments and for the original papers, and failing to find them. The defendant was then allowed, after objection, to read to the jury entries on the execution docket of the issue of sundry executions against Baugham, returnable to September Term of the County Court. The reserved question was decided against the defendant.
G. M. Powell testified that William Mann had possession ever since he knew the land in 1857, cultivating and using it as his own, as has his surviving wife used it since his death, and he had never heard of any payment of rent by either.
Instructions were asked for the plaintiff as follows:
1. If Mann went into possession with the verbal consent of Outland, he thereby became a tenant at will; and if he continued in possession, without paying any rent, continued to be a tenant at will until the death of Outland's wife in 1878, when the tenancy was determined, and his possession was not adverse during that period.
2. That if such be the case, his adverse possession commenced at the death of Mrs. Outland in 1878, and was not sufficient to bar plaintiff.
3. That if he was a tenant at will, and the tenancy determined by the death of Mrs. Outland, he had no estate after her death, and the defendant cannot claim under him, and her possession is adverse.
4. If you believe the testimony of the witnesses, the relation of landlord and tenant was established between Mann and Outland, and (238) defendant cannot set up Mann's possession against the plaintiff.
The court instructed the jury as follows:
The burden is on the plaintiff to establish his title or show that he was the owner of the land in controversy when the action was brought. He may do this in either one of several ways.
He may show a connected chain of title from the State to the plaintiff. He may show the title out of the State, and that his title matured before *Page 201 
the action was brought by seven years possession by plaintiff or those under whom he claims. He may, without showing his title out of the State, establish his title by showing possession, under color of title, for 21 years.
He may, if he can, show that the defendant, when the action was brought, was a tenant of the plaintiff as to the land in controversy, and establish his title by estoppel. The plaintiff has shown papers, title, or color of title as far back as 1825, but has offered no proof of possession under it prior to the entry of William Mann, 1848. It is admitted that William Mann entered on the land in 1848 to 1850, and his wife, Cherry Mann, the defendant, had had possession from that entry up to the bringing of the action on 13 September, 1881.
If William Mann entered upon the land in 1848 or 1850 and held the land, claiming it as his own until his death in the year 1881, and it was held by his wife, the defendant, Cherry Mann, from his death in 1881 till 13 September, 1881, when the action was brought, and if Joab Outland put William Mann in possession, telling him that the land should be a home to him, as testified by the witnesses, and the plaintiff complied with the stipulations of the trust deed by supporting Joab Outland till he died in 1865, and his wife till she died in 1878, the defendant would be deemed in law the tenant of the plaintiff and estopped from disputing his title, and you would respond "Yes" to the first issue. The finding on the first issue settles the finding on the (239) second. If Mann did not enter under license from Joab Outland or as his tenant, you will respond "No" to the first issue; or if the plaintiff did not support Outland and his wife until they died, you will respond "No" to the first issue. The jury will respond in dollars and cents to the third issue, giving the value of annual rent as they may determine from testimony. The burden is on the plaintiff to show that he has complied with his contract to support Outland and his wife, and if he has failed to do so he cannot recover, and you will respond to the first issue "No."
The plaintiff excepted to the refusal of the court to give instructions asked and to the instructions given in lieu thereof. The plaintiff entered no specific objections to the charge at the time. Verdict for defendant.
While the instructions asked were not given, in very words, all that is material to the defense contained in them are embodied in the charge. For the court told the jury that "if Joab Outland put William Mann in possession, telling him *Page 202 
that it should be a home to him, as testified to by the witnesses; and further, if the plaintiff complied with the provisions of the trust deed, the defendant would be deemed in law the tenant of the plaintiff and estopped from disputing his title." So the defense was distinctly put to the jury, and the appellant has no cause of complaint.
There is no error and the judgment is
Affirmed.
Cited: Mobley v. Griffin, 104 N.C. 115; Carlton v. R. R., ibid., 368;Bonds v. Smith, 106 N.C. 563; Alexander v. Gibbon, 118 N.C. 798; S. v.Booker, 123 N.C. 725; Pool v. Lamb, 128 N.C. 2; Stewart v. Keener,131 N.C. 487; Moore v. Miller, 179 N.C. 398.
(240)