*JAMES A. BRYAN AND MARY S. BRYAN v. WASHINGTON SPIVEY et al.

*Possession—Color of Title—Evidence.*

1. In an action to recover land—a trial by jury having been waived—a witness was permitted to state that certain persons " took possession," " remained in possession," and " had possession" of the disputed premises, without giving the specific acts of the parties in respect to their occupation: *Held*, that although possession is a mixed question of law and fact, the testimony was properly admitted, and, in the absence of conflicting evidence, the Court was warranted in accepting the expressions as a statement of the fact of actual occupation.

2. Every possession is taken to be on possessor's own title, until the contrary is shown.

3. The burden is upon the defendant to establish the defence of adverse possession under color of title.

4. Where defendants entered originally without color and occupied the lands in severalty, and subsequently a deed was made conveying the lands to trustees for the defendants collectively, but there was evidence that defendants continued to hold in the same manner as before the execution of the deed, it was not error to hold that the defendants had failed to establish title by adverse possession under color.

5. In order to raise the presumption of a grant by thirty years' possession, it is not necessary to show privity between the successive tenants of the land.

CIVIL ACTION, tried at February Term, 1891, of CRAVEN Superior Court, *Connor, J.,* presiding.

*CLARK, J., did not sit on the hearing of this appeal.

The plaintiffs claim title, and seek to recover possession of the land in the county of Craven, known as James City.

The original summons was issued on the 4th day of October, 1880. On the 21st day of September, 1881, and on the 9th day of September, 1889, other summonses issued, bringing into the Court other defendants. The parties waived trial by jury, and submitted the cause to the Court to find the facts and declare the law arising thereupon.

The plaintiffs introduced W. H. Marshall, who testified as follows:

"I am acquainted with the land described in the complaint. I have known it since 1829. The description in the complaint includes what is known as James City. This land has been used and occupied by private individuals since 1829. Richard D. Speight, and those claiming under him, had it in possession from 1829 to 1858. Richard Speight left as his only son and heir at law, Richard Dobbs Speight, Sr. Richard Dobbs Speight left as his children and heirs at law, Richard D. Speight, Charles Speight, William Speight, and Margaret, who married Judge Richard Donnell. William Speight died in infancy. Charles Speight died in 1831, unmarried and without issue. Richard D. Speight died unmarried and without issue. Margaret Donnell died, leaving surviving her her husband, Judge Donnell, who died in 1864, and as his children and heirs at law:

(1). Mary S., who married Charles Sheppard.

(2). Richard S., who died unmarried and without issue.

(3). Francis, who married James Sheppard, and died, leaving J. R. D. Sheppard her son and heir at law.

(4). Ann, who has never married.

(5). Speight, who married Thos. M. Curl during the year 1856, and was under coverture at the commencement of this action. '

Peter G. Evans took possession of the land in controversy in 1858, and remained in possession until 1862, when the colored people settled there. They were placed there by the United States Government March 14th, 1862. They were settled as contrabands. The Government had possession.

From 1858 until 1862, Peter G. Evans and Richard S. Donnell had joint possession. Evans had it when the colored people went there. Donnell had it surveyed in 1858 or 1859."

The plaintiffs then introduced the will of Richard Dobbs Speight, Sr., dated December 1st, 1802.

The testator gave his entire estate to be divided equally between his wife and four children.

Deed from Mary S. Sheppard, Mr. and Mrs. Curl, and Ann Donnell to Mary S. Bryan, dated 1880.

Deed from J. R. D. Sheppard to Mary S. Bryan, 1880.

The description in the deeds covers the *locus in quo.*

Samuel Aydlett, a witness for the plaintiff, testified: "The defendants were living in James City in 1881 and 1887. I live there now, lived there since 1862, a good many of the defendants have lived there since 1862. They have lots enclosed with fence, and have houses in the enclosures which they occupy."

The defendants then introduced deed from Southy B. Hunter, Harmon Parmler, John Latham, and Charles H. Russell, to James Salter, dated September 25th, 1867, and recorded June 20th, 1882. (See exhibit " C.")

Southy B. Hunter, for the defendant, testified: "I live in James City. Have lived there since 1865. The deed from myself and others covers the land known as James City. It was made because Horace James was oppressing the people collecting taxes. He was the agent of the Freedman's Bureau. The government sent out two officers. The people met and appointed a committee. Some of the defendants held possession by virtue of their original possession,

and others by purchase from those moving away. After the deed was made the defendants claimed under James Salter. The deed did not interfere with any lots except those that were vacant. Those already having lots remained in possession. Vacant lots were sold by Salter. Those who were there when the deed was made claimed to own these lots separately, and no one else had any interest in them. Those who came in afterwards bought from those who moved away. The people of James City were paying rents to Horace James before the deed was made. They paid no more rents after the deed was made. Had not paid any for a long time. Salter was to sell or give it away, as he pleased. We sold only the vacant lots to Salter."

William Bembury: "I live in James City. I have a lot there. I claim it under the deed to James Salter. Have been living there since the place was first located. I have a house there. I claim to own it myself. No one else has any interest in it. I claim it in the same way I did when I first went there. We appointed a committee and gave it up to them. The deed was made for the people of James City. The other defendants claim under the Salter deed. I expect that they all claim as I do."

The plaintiffs admitted that all of the defendants have been in adverse possession of the several parts of James City, claimed by them since 1863, having no connection with Peter G. Evans' title. That all of the defendants made the same claim as the last witness, William Bembury.

From the foregoing testimony and admissions, the Court found the following facts :

Richard Dobbs Speight (the elder) died, leaving a last will and testament devising his entire estate to his wife and four children. His said children were Richard Dobbs (the younger), William, Charles and Mary. The first three died unmarried and without issue. Margaret married Richard

Donnell, and died leaving surviving her her said husband, who died during the year 1864, and her children:

(1). Richard S., who died unmarried and without issue (prior to January 1st, 1880).

(2). Mary S., who married Charles Sheppard.

(3). Francis, who married James Sheppard, and died leaving as her heir at law John R. D. Sheppard.

(4). Ann, who has never married.

(5). Speight, who married Thos. M. Curl during the year 1856, and was under coverture at the commencement of this action.

The children and devisees of Richard D. Speight, and those claiming through them, were in the possession of the land in controversy from 1829 to 1858, when one Peter G. Evans went into the possession jointly with Richard S Donnell, and they remained in such joint possession until 1862.

Mrs. Mary S. Sheppard, Miss Ann Donnell, Mrs. Speight Curl and John R. D. Sheppard conveyed their right, title and interest in said land prior to the commencement of this action to the *feme* plaintiff, Mary S. Bryan.

During the year 1862 the military authorities of the United States, then occupying the city of New Berne, placed the defendants upon the land in controversy. That since the 14th day of March, 1863, the defendants have been in the actual and adverse possession of the several parts of the land in controversy claimed by those in severalty. That when the said defendants were put upon said land they severally enclosed and built upon lots or portions thereof, and used and occupied them as homes. That they laid out streets between said lots, and used the same adversely to the plaintiffs, and those under whom they claim, for the purpose of passing to and from their said lots.

During the year 1867 one Horace James, an agent of the Freedman's Bureau, demanded taxes or rents from the defendants, whereupon, acting upon the advice of some

officers of the United States Government, the defendants
resident upon said land then known as James City, called
a public meeting and appointed a committee to act for them
in respect to said land on the 25th day of September, 1867.
Certain members of said committee, Southy D. Hunter,
Harmon Parmler, John Latham and Charles H. Russell,
signed the deed to John Salter, hereto attached and marked
Exhibit " C." Said deed was admitted to probate and reg-
istration on the 20th day of June, 1882. The land known
as James City is bounded by Neuse river on the north,
Scott's creek on the east, a line of breastworks on the south,
and by Scott's creek on the west. Southy B. Hunter, one of
the makers of said deed, testifies that its purpose was to con-
vey the vacant lots to James Salter. After the signing of
the said deed there is no evidence as to its custody prior to
the probate. The defendants, after the said deed was signed,
continued to occupy the several lots or portions of said land
formerly enclosed by them in the same manner as they had
before done. That each of the said defendants claimed the
lots occupied by them in severalty, claiming no interest in
any other lots. The defendants continued to use the same
streets in the same manner as they had theretofore done.

From the foregoing facts, the Court declared the following
conclusions of law:

(1). That from the possession of the said land in contro-
versy from 1829 until the issuing of the summons in this
action by private individuals, a presumption arises that the
State has parted with its title thereto.

(2). That from the possession of the said land from 1829
until 1858, by the children of Richard D. Speight, and those
claiming through them, the law presumes the execution of
a deed to them by the true owners.

(3). That by the death of Richard D., William and Charles
Speight, unmarried and without issue, their interest in the
*locus in quo* descended to Mrs. Margaret Donnell, and upon

her death her title descended to her children, Richard S., Mary S., Ann, Francis and Speight, subject to the life-estate as tenants by the courtesy of her husband, Richard Donnell, who died in 1864.

(4). That said Richard Donnell was ousted, and Peter G. Evans and Richard S. Donnell went into possession of said land in 1858.

(5). That said Evans and Richard S. Donnell remained in possession until 1862, when they were ousted by defendants.

(6). That a cause of action accrued to the children of Mrs. Donnell upon the death of their father during the year 1864, but that, by the operation of the several acts of the General Assembly, the time within which they were required to bring their action is to be counted from January 1st, 1870    (Save as to Mrs. Curl, who was under coverture).

(7). That upon the death of Richard S. Donnell (before the date of the deeds to the *feme* plaintiff) unmarried and without issue, his interest in the said land descended to his sisters, Francis, Ann, Mary S., and Mrs. Curl.

(8). That upon the death of Mrs. Francis Sheppard her interest descended to her son, John R. D. Sheppard.

(9). That by the operations of the several deeds set forth in the testimony, the title of Mrs. Curl, Miss Mary S. Sheppard, Miss Ann Donnell and John R. D. Sheppard, passed to the *feme* plaintiff, Mrs. Mary S. Bryan.

(10). That the entry by the defendants upon the land, and the occupation of the several lots or parcels thereof by them, on March 14th, 1862, was without color of title, and that such entry constituted an ouster of the true owners.

(11). That after the signing of the deed of September 25th, 1867, by Southy B. Hunter and others to James Salter, the defendant, continued to occupy their several lots enclosed by them in the same manner as before, and the character of their possession was not thereby changed.   This finding is based upon the fact that the testimony in respect thereto is

conflicting, and, taken in connection with the answer of November 11th, 1890, the Court is unable to find that they were holding under the provisions of said deed for seven years prior to the commencement of this action.

(12). That in respect to the interest of Mrs. Curl, she being, since 1856, under coverture, it is not affected by the statute in any aspect of the case.

When the plaintiffs then rested their case, the defendants moved for judgment for that the testimony of W. H. Marshall in regard to possession was insufficient, too uncertain, and indefinite; that possession was a question of fact and law; that plaintiffs must show that the land was used and occupied by showing what was done on it and by whom; that the testimony of said Marshall, "those claiming under him," was insufficient, uncertain and improper, unless the names of the persons referred to were given, and evidence of the manner of their claims under him was shown; and also because the testimony of said Marshall that "from 1858 to 1862, Peter G. Evans and Richard S. Donnell had joint possession," was insufficient, too indefinite and uncertain; and because no act of possession was shown, the evidence in regard to the possession of the land on the part of the plaintiffs being conclusions of law only; and because, upon the whole of the testimony of the plaintiffs, they were not entitled to recover. Motion overruled; defendants excepted.

The defendants then moved for judgment on the whole of the evidence—

1. Because the plaintiffs had failed to show that they were entitled to the land.

2. Because the defendants had proved, and it was admitted, that they had been in the adverse possession of the land claimed by them since 1863.

3. Because the defendants had proved, and it was admitted, they had been in possession of the land claimed by them

since the 25th day of September, 1867, under the deed from Southy B. Hunter and others.

The motion was refused, and the defendants excepted.

Defendants moved for judgment on the facts found by the Court. Motion denied, and defendants excepted.

The defendants moved for a new trial on the ground that the evidence of W. H. Marshall that "the land described in the complaint has been used and occupied by private individuals since 1829," and that Richard D. Speight, and those claiming under him, had it in possession from 1829 to 1858, should not have been admitted, and also on the grounds that the evidence of said Marshall, that from 1858 until 1862 Peter G. Evans and Richard S. Donnell had joint possession, and because said will and deeds were improperly admitted in evidence.

The motion was refused, and defendants excepted.

There was judgment for the plaintiffs, from which the defendants appealed.

[EXHIBIT C.]

STATE OF NORTH CAROLINA—*Craven County.*

This do certify that we, the undersigned, do agree to bargain and sell to James Salter and his heirs for the people of the below named place to pay the expenses of the said lands, a certain piece of land known as the Kimball Hill and the James City settlement, situated in the said county, opposite the city of New Berne, that the United States give us, who told us not to pay rent to anyone, and whereas the said tract of land was given to twelve of us as a committee by the authority of the others, we do bargain and sell all the said land, except lots have been bought by same from parties that have moved and sold their lots and given deeds for

the same, all of which we submit, and do sell for the sum of
$150—one hundred and fifty dollars.

Given under hands and caused our seals to be affixed,
this 25th day of September, 1867.

SOUTHY B. HUNTER.    [Seal.]
HARMON PARMLER.    [Seal.]
JOHN LATHAM.    [Seal.]
C. H. RUSSELL.    [Seal.]

*Mr. W. W. Clark,* for plaintiffs.

*Messrs. M. DeW. Stevenson, O. H. Guion* and *J. W. Hinsdale,*
for defendants.

SHEPHERD, J.: The exceptions addressed to the admission
of the documentary evidence of the plaintiff having been
abandoned, the only questions which remain for our consid-
eration, are whether the testimony adduced upon the trial
was legally sufficient to sustain the findings of fact, and
whether these findings warrant the conclusions of law as
declared by the Court below.

(1). It is first insisted by the defendants, that upon the
whole testimony the plaintiff has failed to show that the title
has passed out of the State, and that, granting that the title
is out of the State, there is nothing to support the presump-
tion of a conveyance to the plaintiff or those under whom
she claims.

It is well settled that an adverse possession of land for
thirty years raises the presumption of a grant from the State,
"and that it is not necessary even that there should be a
privity or connection among the successive tenants." *Davis*
v. *McArthur,* 78 N. C., 357; *Reed* v. *Earnhart,* 10 Ired., 516; *Wal-
lace* v. *Maxwell,* 10 Ired., 110; *Fitzrandolph* v. *Norman,* N. C.
Term Rep., 127. " This presumption," says SMITH, C. J., (in
the case first cited), " arises at common law and without the
aid of the act of 1791, and it is the duty of the Court to

instruct the jury to act upon it as a rule of the law of evidence. *Simpson* v. *Hyatt*, 1 Jones, 517." ·Now, if, as found by his Honor, the land in controversy was "in the possession of the children and devisees of Richard D. Speight, and those claiming through them," from 1829 to 1858 (a period of twenty-nine years), and that from that date until 1862 it was occupied by Peter G. Evans, the law would raise a presumption that the title had passed out of the State, and this without reference to whether the said Evans was claiming jointly with Richard S. Donnell, and regardless of any privity between him and the preceding occupants.

If the title was out of the State, the law would also presume that a deed had been executed by the true owner to the parties under whom the plaintiff claims, they having had continuous adverse possession of the same, succeeding each other as privies, for twenty years. *Hill* v. *Overton*, 81 N. C., 395; *Seawell* v. *Bunch*, 6 Jones, 195; *Taylor* v. *Gooch*, 3 Jones, 467; *Davis* v. *McArthur*, *supra; Melvin* v. *Waddell*, 75 N. C., 361. These propositions do not seem to be seriously controverted by the counsel for the defendants, but they insist that the testimony is not sufficient to show any possession whatever from which his Honor could find, as a legal inference, or otherwise, that there was an adverse occupation as claimed by the plaintiff. In support of this position they say "that the testimony of W. H. Marshall (the only witness introduced by the plaintiff) in regard to possession, was insufficient; too uncertain and indefinite; that possession is a question of fact and law, and that plaintiff must show that the land was used and occupied by showing what was done on it and by whom."

It cannot be doubted that what constitutes adverse possession is a mixed question of law and fact, and the same may be said of a possession that is not adverse where the evidence shows that the possession claimed is constructive only, or in other instances where it depends upon the application of legal principles.

Where, however, a witness testifies that a certain person is in possession of land, and where, as in the present case, there is nothing in his or any other testimony to indicate that the possession was a conflicting one, or that the witness intended that his language should be understood in any other than its ordinary sense among laymen, to-wit, actual possession or occupation, we cannot but treat it as the statement of a simple fact, and as such a proper subject for the consideration of a jury, or the Court when a jury trial has been waived. That such is the ordinary meaning of the language is manifest from the following authorities:

." Possession expresses the closest relation of fact that can exist between a corporeal thing and the person who possesses it, implying either (according to its strictest etymology) an actual physical contact as by *sitting,* or (as some would have it) *standing* upon a thing." Burril Law Dict., 313.

" A witness may testify directly in the first instance to the fact of possession if he can do so positively, subject, of course, to cross-examination." Abbott's Trial Ev., 622, 590.

In *Rand* v. *Freeman* (1 Allen, 517), a witness was asked, " Did you take possession of the property?" The question was objected to as incompetent to prove possession. The Court said, " It is objected, that the question was illegal because possession consists partly of law and partly of fact. But it is a sufficient answer to this to say, that the word is often used merely in reference to the fact, and the defendant could have protected himself from all prejudice by cross-examination." In *Hardenburgh* v. *Crary,* 1 Barb., 32, the' Court, in reference to a similar question, said, " It might involve the necessity of further questions, and perhaps of a rigid cross-examination, but this last, we think, was the true remedy and not an objection to the question itself. It belongs to that class of facts, of which there are many in the law, seemingly involving, to some extent, the expression of an opinion, or a conclusion from other particular facts as to which, from the

necessity of the case, the law tolerates a direct and comprehensive question."

Our conclusion, therefore, is that the testimony of the witness Marshall was evidence of actual possession and occupation, and, as such, was proper to be considered by the Court.

It is further objected that the testimony of the said witness—that "Richard D. Speight and those claiming under him, had it (the land) in possession from 1829 to 1858"—was "insufficient, uncertain and improper, unless the names of the persons referred to were given, and evidence of the manner of their claims under him was shown." The witness, after testifying as above, immediately proceeded to state, with much particularity, the names of the heirs and devisees of the said Speight, and the successive descents and devises, down to the date of the conveyance of the property in question to the plaintiff. His Honor finds, in substance, that these were the persons who were claiming under the said Speight, and were in possession, as stated by the said witness. We think that a fair construction of the testimony warranted the finding. This being so, we have but to apply the presumption of the adverse character of the holding arising from the unexplained fact of actual occupation, and the conclusion of the Court, that those under whom the plaintiff claims were the owners of the property, is fully vindicated. *Ruffin* v. *Overby*, 88 N. C., 369. The case just cited is fully sustained by *Jackson* v. *Commissioners of Hillsboro*, 1 Dev. & Bat., 177, in which it is said (RUFFIN, C. J., delivering the opinion), that "every possession is taken to be on the possessor's own title until the contrary appears, as the possession is in itself the strongest evidence of the claim of title, and when long continued, of the title also. * * Leaving the possession to the jury as a ground of presumption, left it as evidence both of the right and the claim of right; and it cannot be doubted that the jury must have under-

stood that, to authorize the presumption, they must believe that Brooks occupied and used the ground *as his own.* To establish such claim did not require express evidence of it independent of the possession itself."

(2). It is further contended that admitting that the title was in the persons above named, the defendants are protected by their adverse possession under color of title for seven years. This defence is an affirmative one, and the *onus probandi* is, of course, upon the defendants to establish it. *Ruffin* v. *Overby*, 105 N. C., 78. It is admitted by the plaintiff that the defendants have been in the adverse possession of the several parts of the property (James City) since 1863, "claiming the same, as the * * * witness Wm. Benbury." It is denied, however, that they claim under color of title, and his Honor finds that they entered, without such color, in 1863, and that after the execution of the deed by Hunter and others to James Salter in 1867, the defendants "continued to occupy their several lots enclosed by them in the same manner as before, and that the character of their possession was not thereby changed." "This finding," says his Honor, "is based upon the fact that the testimony in respect thereto is conflicting, and taken in connection with the answer of November 11th, 1890, the Court is unable to find that they were holding under the provisions of said deed for seven years prior to the commencement of this action." It is insisted that this finding was unauthorized by the testimony, and especially by reason of the admission of plaintiff. It will be observed that the admission was not that the defendants were holding under color of title, but that they were claiming in the same manner as the witness Benbury. The testimony of this witness, as his Honor says, is conflicting. The witness says, first, that he claims under the deed to Salter. This deed, it will be noticed, is in trust for "the people of James City": by which we must understand (nothing further appearing), they are to take as tenants in common. He then states, in effect, that he claims his lot in

severalty, and further remarks, " I claim it in the same way I did when I first went there." Eliminating, even, the answer above mentioned, which claims in severalty and makes no mention of the deed, we are not surprised at the inability of his Honor to find that Benbury was claiming under color of the deed to Salter; and surely his statement referred to in the admission of plaintiff cannot, even in the absence of the finding, be construed into the concession insisted upon. Appreciating the force of this reasoning, the counsel for defendants very earnestly contend that the possession, being admittedly adverse, and the deed to Salter having been proved and introduced in evidence, the law raises a presumption that the defendants claim under it, and that therefore the burden of proof is shifted, and it is incumbent on the plaintiff to rebut such presumption. *Register* v. *Rowell,* 3 Jones, 312. To this it may be answered that the supposed presumption is already rebutted by the finding of the Court, and that we cannot review its conclusion of fact when there is any evidence tending to sustain it. Treating the finding, however, as negative in its character (which is not the case), and conceding, that in order to raise the presumption it is unnecessary that the color of title should have been executed contemporaneously with the entry, an insuperable objection to the defendant's contention is encountered in the fact *that none of these defendants are grantees in the deed; nor are they named therein as cestuis que trustent.* *Graybeal* v. *Davis,* 95 N. C., 508, and the cases cited. This is an indispensable requisite to the presumption insisted upon. Such being the case the burden continued upon the defendants to connect themselves with the said deed and to show that they claimed under the same. Having failed to show this to the satisfaction of the Court, and, indeed, it having been affirmatively found to the contrary, we are unable to see any ground for reversing the judgment, and it must therefore be affirmed.

Affirmed.