W. H. ALEXANDER, et al. v. N. GIBBON, et al.

*Partition Proceedings—Form of Petition—Plea of Sole Seizin—Adverse Possession—Ejectment—Rules of Proof and Estoppel Peculiar to Actions of Ejectment—Judge's Charge—The Code, Sections* 136, 137, 1892, 1903.

1. The effect of a plea of sole seizin set up in a proceeding for partition is, practically, to convert the case into an action of ejectment, and to bring into operation the rules of proof and estoppel which obtain in that action.

2. The various methods of making out a *prima facie* case for the plaintiff in ejectment pointed out.

3. When one who is made a defendant in a proceeding for partition, because he is the husband of one of the alleged co-tenants, pleads sole seizin, it is competent to show that he entered and held possession as tenant of the alleged co-tenant.

4. The rule that a tenant is estopped to deny the title of his landlord is honorable alike for its antiquity and its usefulness. It is one of the most valuable rules of practice and evidence. To hold that it does not apply when sole seizin is pleaded in a proceeding for partition would be to destroy all reasoning by analogy and the logic of the law.

5. The rule of estoppel based upon a common source of title—that where both sides in an action of ejectment claim under A. both are estopped to deny his title—is not simply an arbitrary fiction of the law. It is based on reasoning and logical deduction.

6. Possession of the tenant is that of the landlord; and, in making out title by occupancy for a given length of time, the period covered by the possession of the tenant is to be added to that covered by the possession of the landlord in person.

7. An instruction to the jury which is so complicated, involved and confusing as to leave the jury in doubt whether an adverse possession, sufficient to establish title in the possessor, must be thirty or fifty years, necessitates a *venire de novo*.

8. In computing the number of years of an adverse possession the periods of occupancy by the ancestor and the heir respectively should be added together.

9. The law presumes possession unexplained to be adverse possession.

10. Sections 136 and 137 of *The Code* being repealed by Ch. 113, Laws 1891, the time between May 20, 1861, and January 1, 1870, is no longer to be omitted in computing time as regards Statutes of Limitation, except in actions commenced prior to January 1, 1893.

11. There is no statute or judicial ruling in this State which makes an allegation of possession vitally essential to a petition for partition, except the decision in *Alsbrook* v. *Reid*, 89 N. C., 151, which case is overruled on that point.

AVERY, J., concurs in the conclusion, but not in the opinion.

CIVIL ACTION, tried before *Bryan, J.*, at January Term, 1896, of MECKLENBURG Superior Court.

The facts appear in the opinion.

*Messrs. Clarkson & Duls*, for appellants.
*Messrs. Burwell, Walker & Cansler*, for defendant.

FURCHES, J.: This is a proceeding commenced in the superior court of Mecklenburg, (before the clerk,) by a part of the children and heirs-at-law of Joseph M. Alexander, against the other children and heirs-at-law of said Alexander, and the husbands of the *feme* defendants, for sale and partition of land. All the heirs, so made defendants, answer and admit the tenancy in common, except Harriet, who is the wife of the defendant, N. Gibbon. She files no answer, and thereby admits the allegations of the complaint and the tenancy in common. The defendant, N. Gibbon, who is not a child and heir-at-law of Joseph M. Alexander, alone answers the complaint, which consists of six paragraphs, as follows:

" The defendant N. Gibbon, answers the petition and says:

" That the land mentioned and described in said petition is not the property of the persons named as the ten-

ants in common thereof, but that he is sole seized of said
land and is in possession of it in his own right."

It is admitted, as claimed by defendant, that when sole
seizin is pleaded, in a proceeding among tenants in com-
mon for partition, it becomes substantially an action of
ejectment. *Huneycutt* v. *Brooks*, 116 N. C., 788. And
it then becomes subject to the rules of law applicable to
trials in actions of ejectment—that plaintiffs must
recover by the strength of their own title, and not on the
weakness of defendant's title. This is the doctrine enun-
ciated in *Huneycutt* v. *Brooks, supra.*

And while this case and this line of authorities puts the
burden of proof in actions of ejectment on the plaintiffs,
it also puts upon the defendant the burden of the rules
pertaining to such trials.

Plaintiffs then may establish their title in any way they
might do if this had originally been commenced as an
action of ejectment. By showing an unbroken line of
conveyances from the State to them, or to Joseph M. Alex-
ander, their father, and that he is dead, or by showing
possession in Joseph M. Alexander, and those under whom
he claimed to the time of his death, and the possession of
his heirs-at-law since his death, for a sufficient length of
time to establish or to ripen their title into a perfect title;
or, by way of estoppel, by showing that the defendant
claims title from the same source as plaintiff; or, by show-
ing that he entered and sustains the relation of tenant to
plaintiffs. *Conwell* v. *Mann*, 100 N. C., 234.

These are the general rules applicable to all actions of
ejectment, and must apply to actions for partition, where
sole seizin is pleaded, and the action becomes substantially
an action of ejectment, but in this case they are peculiarly
applicable and illustrate the wisdom of their application.
The plaintiffs allege that as the heirs-at-law of Joseph M.

ALEXANDER *v.* GIBBON.

Alexander, they and the other heirs-at-law of said Alexander, as such heirs, are tenants in common of the land described in the complaint.   All the heirs answer and admit these allegations except Harriet, who files no answer and in this way admits the allegations of the complaint.   But the defendant, N. Gibbon, not an heir of J. M. Alexander, but who happened to be the husband of Harriet, and in that way made a defendant, answers and says it is not true that the plaintiffs and defendants, who are the heirs of J. M. Alexander, are the owners of this land, but that he is the owner.   And when plaintiffs offered evidence to show that defendant Gibbon entered as the tenant of the heirs and was to pay the taxes and was to look after and take care of the land for the heirs, he objected to evidence and the court ruled it out.   In this there was error. The authorities are so numerous and uniform that defendant admits that this evidence would have been competent if the heirs had brought an action of ejectment against him.   But he says, as they brought an action for partition, which he has turned into an action of ejectment, it is incompetent.   This cannot be so.   To sustain this ruling of the court would be to destroy one of the most valuable rules of practice and evidence, a rule honorable alike for its age and for its usefulness.   To sustain such rulings would be to destroy all reasoning by analogy and the logic of the law.

This rule of estoppel, based upon a common source, is not simply an arbitrary fiction of the law.   It is based on sound reasoning and logical deduction.   If two parties claim title from A. it must be conceded by them that A. had the title, or they would not claim under him.   This being so, it is not necessary to consume time in proving what is admitted to be true—that A. had the title.

Then A. is made the starting point, and it is only left to determine who has A.'s title or the title derived from A.

In a case of tenancy in common, where the parties claim as heirs-at-law, under the canons of descent, the establishment of the common course determines the rights of the parties. As in this case, all the heirs-at-law of J. M. Alexander claim that he was the owner of this land at the time of his death, this establishes as to them the legal title to this land, and they are forever estopped to deny this, just as any other parties of record are estopped by the judgment of a court of competent jurisdiction. So, we see that the operation and effect of this rule of estoppel is to establish the title in the plaintiffs. And the rule that the plaintiff must recover by the strength of his own title, and not by the weakness of the defendant's title, is preserved.

When this case was argued, and when first considered, it was treated by us as if the plaintiffs were proposing to prove the declarations and admissions of one of the heirs-at-law of Joseph M. Alexander.

But upon further consideration, we find this is not the case. Had this been so, we would have held that this evidence was competent, as tending to show that the heir-at-law of said Alexander claimed title under the common ancestor and disprove the plea of sole seizen. *Nelson* v. *Whitfield*, 82 N. C., 46; *Graybeal* v. *Davis*, 95 N. C., 508; *Conwell* v. *Mann*, 100 N. C., 234; *Clifton* v. *Fort*, 98 N. C., 173, and that line of cases.

But it was clearly admissible to show that the defendant, N. Gibbon, entered under a contract and agreement with the heirs of J. M. Alexander, to pay the taxes and to look after and take care of the property for the heirs, which constitutes, as between him and the heirs, the relation of landlord and tenant; and that he was thereby

estopped to deny the title of the heirs.   *Cooper* v. *Axley*, 114 N. C., 621; *Conwell* v. *Mann*, 100 N. C., 234.

It was also admissible to establish the fact of tenancy, as affecting the question of title by occupancy.   As it is a well-established principle of law that possession by a tenant is the possession of the landlord, and whenever it is established that N. Gibbon was the tenant of the heirs of J. M. Alexander,. then the time that he has been in possession is to be added to the possession of J. M. Alexander and his tenants, as evidence going to make out title by occupancy or possession.

Defendant, N. Gibbon, asked for special instructions, which were given by the court, as asked; each of these instructions were excepted to by plaintiffs and each exception must be sustained.   The instructions are as follows:

" First.   That, in order to show title in themselves, plaintiffs must satisfy the jury, by preponderance of evidence, that there has been open, notorious and adverse possession of the land for thirty (30) years by J. M. Alexander.   This is necessary to show title out of the State. That plaintiffs must, also, show an open, notorious, adverse and continuous possession for twenty years in J. M. Alexander, in order to vest the title in them as his heirs.

" Second.   That this possession must be open and notorious and continuous.   If there was an interval of several years, during which J. M. Alexander had no such possession, the possession would not be continuous.   The possession must also be adverse, and the mere fact that J. M. Alexander actually occupied the land or had possession of it would not be sufficient to show an adverse possession, because the plaintiffs must show, not only a possession, but must go further and show affirmatively that this possession was adverse, as the law does not infer from the mere fact of the possession that it was adverse.

118—51

"Fourth. That, in ascertaining the length of the possession of J. M. Alexander, the time from the 20th of May, 1861, to the 1st of January, 1870, must be excluded from the count.

"Fifth. That plaintiffs must not only show an open, notorious, adverse and continuous possession for twenty years, but the said possession, in order to confer a title good against the defendant, N. Gibbon, must have been under known and visible lines or boundaries."

The first instruction is erroneous for the reason that it is complicated, involved and confusing. It at least leaves the jury in doubt as to whether the thirty years' adverse possession is sufficient to establish title in the plaintiffs, or whether it requires both thirty years and twenty years, making fifty, to do so. It is also erroneous in that it limits the time in which plaintiffs may make out their title by adverse possession to the death of J. M. Alexander; whereas the plaintiffs, the heirs, should have been allowed to show possession in themselves since the death of their father, if they could do so.

The second prayer and instruction is erroneous in that it holds that possession or occupation of itself is not sufficient to constitute *adverse* possession. "But that plaintiffs must go further and show *affirmatively* that this possession was adverse, as the law does not infer from the mere fact of the possession that it was adverse.".

To sustain this ruling would be to overrule *Bryan* v. *Spivey*, 109 N. C., 57, which expressly holds that the law presumes possession unexplained to be adverse possession.

The fourth prayer and instruction are erroneous. Sections 136 and 137 of *The Code*, which suspended the running of the Statute of Limitations, and the presumptions of time, were repealed by Chapter 113, Laws of 1891, but not to apply to actions commenced prior to the 1st

of January, 1893, and of course apply to all actions commenced after that time. This action was commenced on the 31st day of May, 1895. *Nunnery* v. *Averitt*, 111 N. C., 394.

But the learned counsel for the defendant, N. Gibbon, in his argument said if there were errors in the prayers for instructions, which were given by the court—and he did not think there were—that they should not avail the plaintiffs, for the reason that they had failed to allege in their complaint that they were in possession of the land described in the complaint.

We have seen that one of the heirs-at-law of J. M. Alexander (Mrs. Gibbon) was living on the land, and if the defendant, N. Gibbon, is the tenant of the heirs, as they allege he is, they are in possession through him. The possession of one tenant in common is the possession of all. The law presumes the possession to be in the owner, where there is no adverse possession. *Thomas* v. *Garvan*, 4 Dev., 223. And the possession of N. Gibbon cannot be adverse, if he entered as plaintiff's tenant. So, it is seen that at the most this would have been but a formal statement in this case. It was not made below, or it would in all probability have been amended, and for this reason we would dislike to feel compelled to sustain this objection.

The defendant's counsel cites *Alsbrook* v. *Reid*, 89 N. C., 151, which seems to sustain him. But upon examination we find that Sections 1892 and 1903 do not sustain this objection. Section 1892 provides for partition, in the following language: "The superior court on petition of one or more persons *claiming* real estate as tenants in common." And Section 1903 of *The Code* provides for partition "by one or more of the parties *interested* therein." And while it seems clear that these sections, which provide for the partition of land among tenants in common,

ALEXANDER *v.* GIBBON.

do not require any such averment in the complaint, we would still hesitate to overrule what seems to be held to be the construction in *Alsbrook* v. *Reid*, upon this authority alone. But *Alsbrook* v. *Reid* cites two cases, as authority for this ruling, and upon examination we find that neither one of them sustains this ruling, and *Thomas* v. *Gorvan,* 4 Dev., 223, one of the cases cited, is directly to the contrary—holding that the law presumes possession unless there has been an actual ouster. And the other case cited as authority for the ruling in *Alsbrook* v. *Reid* is *Ledbetter* v. *Gash*, 8 Ired., 462. And this case does not even discuss the question.

Upon these authorities we feel justified in overruling that part of *Alsbrook* v. *Reid* which requires it to be alleged in the petition or complaint that the tenants in common are in possession of the land they ask to have partitioned, and which makes this allegation a jurisdictional question. This had in effect been done in *Epley* v. *Epley*, 111 N. C., 505.

If an action is wrongfully brought for partition, this may be taken advantage of by answer.

There is error as pointed out in this opinion, for which the plaintiffs are entitled to a new trial.

New Trial.

AVERY, J. (concurring): Where the plaintiff in a controversy involving the ownership to land offers evidence tracing the defendant's claim to the same source from which he shows the older and better right in himself, Chief Justice PEARSON said, both in *Newlin* v. *Osborne*, 2 Jones, 154, and *Frey* v. *Ramsour*, 66 N. C., at p. 472, that the defendant was precluded from denying plaintiff's right, without first showing a title superior to that of the common source and connecting himself therewith, not because an estoppel arose out of such evidence, but by a

ALEXANDER *v.* GIBBON.

rule of evidence established for convenience in the trial of actions of ejectment. On the other hand a tenant is estopped from denying the right of his landlord to the possession until he either voluntarily surrenders it or is evicted by superior title. So rigidly is this rule of good faith enforced, as an estoppel, that persons who were not *sut juris*, such as slaves and infants, when the relation began, are nevertheless as effectually precluded from denying its existence as though they have been parties to an agreement to demise. But it must be admitted that in some other opinions of this Court the rule relating to tracing title to a common source has been said to operate as an estoppel, and conceding that Chief Justice PEARSON was in error in either aspect of the question, the fact remains that the evidence is offered to show title, not the right to possession. B. brings an action against C. in which he claims title to and possession of a tract of land, and offers an unbroken chain of conveyances from A. to both of them, but it appears that the older and better title derived from A. is in B.; this is *prima facie* evidence of title, but B. cannot recover still unless he goes further and prove that C. is in possession and wrongfully withholds the possession of the land from him.

The Constitution, Art. IV., Sec. 27, provide that justices of the peace shall have jurisdiction " of civil actions founded on contract, wherein the sum shall not exceed $200, and wherein the title to real estate shall not be in controversy." The sum demanded may determine the jurisdiction of money demands, but if the testimony develops the fact that title to land is in dispute, it is declared to be the duty of the justice, though the plaintiff claims in the pleadings that the defendant is his tenant, to forthwith desist from attempting to try. *Hahn v. Guilford,* 87 N. C., 172. On the other hand, where the plaintiff proposes to

show that the defendant is a tenant, unlawfully holding over, the justice may try the issue of tenancy, because that involves only the right to the possession, if nothing more appears upon the trial to be involved in the dispute. *Hahn* v. *Guilford, supra ; Foster* v. *Penry*, 77 N. C., 160 ; *Parker* v. *Allen*, 84 N. C., 466. If A. die before the expiration of the term of his lessee, C, and the land descend to his heir-at-law, B, it is familiar learning that the estoppel growing out of the tenancy operates in favor of A.'s privy in blood, B., (1 Wood L. & T., Sec. 231,) and if C. hold over, B has the same summary remedy to evict him that his ancestor had. Yet, if evidence of the descent and the tenancy shows a common source of title, it is undeniable that it raises the question of title and ousts the jurisdiction of the justice. It is inaccurate, therefore, to say that a rule, whether of practice or estoppel, (which Chief Justice PEARSON says was " adopted by the courts for the purpose of aiding the administration of justice by dispensing with the necessity of requiring the plaintiff to prove the original grant and mesne conveyances by proof that the defendant claimed under the same person,") is applicable merely because the reversion of a lessor descends to the heir during the term. It is well settled by all courts where the common-law is administered that the lessor who holds the fee, as well as his heir and grantee, are, as privies, estopped from denying his right to dispose of the possession, when he made the demise, and, on the other hand, that the mutual estoppel which precludes the original lessee from denying the title of the lessor and his privies in estate, operates upon his sub-lessee or assignee. 1 Wood Landlord and Tenant, Secs. 231, 232 ; *Lunsford* v. *Alexander*, 4 D. & B., 40 ; *Farmer* v. *Pickens*, 83 N. C., 549 ; *Pate* v. *Turner*, 94 N. C., 47.

When a plaintiff brought an action of ejectment under

the old practice and proved that he or his grantor or ancestor demised to the defendant or his assignor, the defendant was estopped from denying his landlord's title, whatever interest the latter claimed, and the plaintiff recovered possession upon the idea that his lessee and those in privity with him were precluded from denying the claim of ownership by virtue of which the demise was made. *Clarke* v. *Diggs*, 6 Ired., 159. And after the forms of actions were abolished and the action for possession could be brought so as to involve and become conclusive as to the ownership of land, it was held that " the allegation of title in fee imported *such title actual and probable* by deed or *such* against defendant by estoppel." *Farmer* v. *Pickens*, 83 N. C., at page 551. It was held also in the last-named case that there was no want of *probata* corresponding with the *allegata*, because though the estoppel of the tenancy only concluded the tenant in all cases as to the right of possession, in the absence of other proof it was also *prima facie* evidence of the title claimed as in the old action of ejectment. The issue of sole seizin having been raised in this case, the effect of establishing the fact that the defendant Gibbon entered as the tenant of the ancestor of the plaintiff was under the rulings in the cases last cited to estop him completely from claiming the possession, and to show *prima facie* only that the plaintiff had title as well as the right to possession. But while the defendant's mouth was closed against setting up a claim to the tenancy, until evicted, it was competent for him to have offered evidence tending to show title in himself in order to have escaped the bar of estoppel as to title in a future action, and for this purpose he might have offered a grant from the State bearing date subsequent to that of the lease under which he entered, even though compelled to yield the possession as a tenant to his landlord. The ruling in

*Conwell* v. *Mann*, 100 N. C., 334, and in *Mobley* v. *Griffin*, 104 N. C., 112, settles nothing except that proof of the right to possession by estoppel carries with it *prima facie* evidence of title. But while it is decided in *Heyer* v. *Beatty*, 76 N. C., 28, and many other cases passed upon by the Court when Chief Justice PEARSON presided and concurred, he still adhered in *Frey* v. *Ramseur*, *supra*, to the opinion that the rule in reference to showing a claim of title from a common source was not founded on the doctrine of estoppel. If the principle which precluded a party from denying a tenancy was an illustration of the doctrine of estoppel, while the other was not, then the two rules were not the same.

I concur in the conclusion of the Court, but not in the opinion, for the reasons given.